JOHN *v.* THE CINCINNATI, RICHMOND, AND FORT WAYNE RAILROAD COMPANY and Another.

CONSTITUTIONAL LAW.—*Subscriptions to Railroads.—Townships.—Taxes.*— The State may make internal improvements, directly, or by a corporation, and for that purpose, levy and collect taxes, or empower counties and townships to do so and subscribe and pay for stock in a railroad company.

SAME.—The act, approved May 12th, 1869, "to authorize aid to the construction of railroads, by counties and townships taking stock in," &c., contemplates a payment for stock at the time of subscription, and not the creation of a debt therefor, and is constitutional.

APPEAL from Wayne Common Pleas.

WORDEN, J.—This was a complaint by the appellant against the appellees, to restrain the collection of a certain tax levied for the purpose of enabling Wayne township, in said county, to aid in the construction of the above named railroad, by subscribing for stock therein.

Demurrer sustained to the complaint, exception, and final judgment for defendants.

The only question made in the cause related to the validity of the act of the legislature of May 12th, 1869, "to authorize aid to the construction of railroads, by counties and townships taking stock in and making donations to railroad companies," so far as the act authorizes townships to thus take stock, to be paid for by means of levying a tax upon the property of the township, as in the act is provided for.

The constitutionality of the act in question was so fully considered and discussed by this court in the case of *The Lafayette, Muncie, and Bloomington Railroad Company* v. *Geiger*, 34 Ind. 185, that but little need be said in addition to what is to be found in the opinion in that case. That was a tax for a county subscription; this for a township subscription. Both are authorized by the law in question. The law was held, in the case above mentioned, to be valid so far as it authorized county subscriptions, and it remains to inquire whether there is any substantial difference between a county and a township subscription, so far as the validity of the law is concerned.

Long before the adoption of our present constitution, townships, as corporations, were known and established. R. S. 1838, p. 596; R. S. 1843, p. 91. They are recognized as such in various provisions of that instrument, as in sections 3, 6, and 7, of article 6, and section 14 of article 7. There seems to be no good reason, constitutionally, why the lesser corporation, territorially, of a township, may not be authorized to aid a railroad company by subscribing for stock therein, as well as the greater corporation of a county.

We take for granted, as a postulate, upon which to found all reasoning on the subject, that the State may lawfully construct roads, canals, or other descriptions of internal improvement, in order to facilitate the social and business intercourse of the people, and to develop its resources and add to its strength, security, and prosperity.

The means of transportation and inter-communication ought to, and in a very great measure will, keep pace with the knowledge, experience, the wants and necessities of the age. Only a few years ago the common roads of the country, with a greater or less degree of improvement, and our navigable rivers and lakes, together with the artificial water carriage afforded by canals, were the only means of transportation or intercourse known to the people of this country. Of so much importance were our lakes and navigable rivers, that it was formerly supposed no considerable interoceanic city could be built except upon their banks. But since the era of railroads all this is changed. Lake, river, and canal navigation is, in a great measure, superceded by them, and towns and cities spring up and prosper at points entirely unaided by natural facilities for transportation; the resources of the country are being developed, and the wealth of the State increased, to an extent unrealized heretofore. In taking a retrospect of the last twenty-five years, and considering the rapid development of our State within that time, in wealth, population, and resources, we can hardly fail to see that the railroad has had much to do with this development. All this has, perhaps, little to do with the question before us, but it may vindicate the wisdom of the legislature in keeping pace with the necessities of the age, and fostering a system of railroads.

The means of transportation and inter-communication being one of the legitimate objects of government, it follows that the legislature may adopt a choice of means, unless restrained by the constitution; they may adopt such as they think will best subserve the purpose intended; they may build railroads, or canals, or turnpikes, or all of them.

The constitution, which vests the legislative authority of the State in the General Assembly, is ample for this purpose. Const. art. 4, sec. 1.

The State being authorized to build railroads, it follows that it may levy a tax, in accordance with the provisions of the constitution, for that purpose. It would be paradoxical to say that the legislature have power to do a given thing, and at the same time say that they have not the power to provide the necessary means for that purpose. The constitution, vesting the legislative authority of the State in the general assembly, is ample authority also for this purpose. The taxing power is legislative in its character, and as such is fully vested in the general assembly, subject to such restrictions as are contained in the constitution. Taxation is perhaps the most universal power possessed by goverments, and may always be resorted to when necessary to carry out any other power granted to the legislature.

As the State may build railroads, and for that purpose levy and collect taxes, the question arises whether she must do it directly through her own employees, or whether she may avail herself for that purpose of a railroad corporation. On both principle and authority she may do the latter. She must necessarily have a choice of means to the accomplishment of the end. The end, so far as the State is concerned, is the furnishing to her citizens of the means of transportation and inter-communication. It is no answer to this to say that the object and end of the railroad company which undertakes the building of the road is the private profit of the company or the corporators. If the corporation builds and operates a railroad, and complies with the law regulating her conduct, the object of the State in respect to the given road is accomplished; the facilities of travel and transportation are furnished. The people along the line of the road who are taxed for the stock subscribed by them, and who can be taxed only on a vote of their own, realize the benefits expected by them, and the State has discharged her duty to them by furnishing the necessary facilities.

Perhaps this is not the most judicious system that could be adopted, on the part of the State, for furnishing her citizens the necessary facilities for travel and transportation, but we are of opinion that the legislature, in adopting it, have not transcended their constitutional authority. Something may, however, be said in vindication of its policy. While the leading and main lines of railroads would, perhaps, invite sufficient capital for their construction, without a resort to taxation by counties or townships for the purpose of subscriptions, yet there are many others, less important and shorter, that could not be built without such local aid as is provided for by the law in question, and which are of great importance and convenience to those living along their lines, and which, when constructed and in operation, confer benefits more than equivalent to the aid furnished.

It is not, however, our province to pass upon the wisdom or policy of the law, but simply its constitutionality. It contemplates a payment for the stock at the time of subscription, and not the creation of any debt therefor, and we think it constitutional and valid.

The judgment below is affirmed, with costs.

*W. A. Peelle, C. H. Burchenal,* and *H. C. Fox,* for appellant.
*J. P. Siddall,* for appellees.