#### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

# STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1874, IN THE FIFTY-NINTH YEAR OF THE STATE.

---

PETTY ET AL. *v.* MYERS, TREASURER, ET AL.

CONSTITUTIONAL LAW.—*Legislative Power.—Appropriation of Aid, by Counties and Townships, to Construction of Railroads.*—The statute authorizing aid to the construction of railroads by counties and townships taking stock in, and making donations to, railroad companies (3 Ind. Stat. 389) is constitutional. BIDDLE, J., dissented, on the grounds, 1. That the taking effect of the law is made to depend on a majority of the local vote of a county or township; 2. That the act is local and special; 3. That the act takes the private property of the citizen against his consent, without the consent of his representative, and without compensation; 4. That the tax authorized by the act is not equal and uniform; 5. That the State can not tax particular localities to build a railroad owned as private property.

APPROPRIATION OF AID TO CONSTRUCTION OF RAILROAD.—*Petition for.—Order of Board of Commissioners for Vote on.—Where Expended.—Mode of Need not be Stated.—Construction of Railroad.—Tax.*—Upon the petition of freeholders of a township to the board of county commissioners, setting forth that a certain railroad company was duly organized, that the line of the railroad of the company ran through the township, and the construction of the railroad would be of great benefit to the township, and praying an appropriation of a certain sum of money, not exceeding two per cent. of the taxable property of the township, to aid in the construction of the railroad, the said board ordered an election for the purpose of taking

the votes of the legal voters of the township upon the subject of appropriating said sum by said township to aid in the construction of said railroad; and, upon the election, so ordered, resulting in favor of the appropriation, the board, at the session at which it determined the amount to be charged for county purposes for the year 1873, ordered that a tax be levied, of a certain per cent., to be collected on all the taxable property of the township, in all respects as other taxes are collected for state and county purposes.

*Held,* that the intention being manifest to raise the money before the subscription or donation should be made, the action of the board was not in violation of sec. 6, article 10, of the constitution, prohibiting subscriptions unless the same be paid for at the time.

*Held,* also, that it sufficiently appeared by the petition that the aid was to be given for the construction of the railroad in that township. *Query,* whether money given by a township in aid of the construction of a railroad must be expended upon that part of the road lying in that township.

*Held,* also, that, although the road was already constructed through the township and the cars were running thereon, if the road was not thoroughly ballasted, and it did not appear that the full amount of aid proposed was not required to complete the road through the township, the question was not raised whether or not the aid was authorized for the construction of the road in the township.

*Held,* also, that the prayer of the petition was in conformity with the statute requiring the vote " to be taken upon the subject of appropriating money by such county or by such township for the purpose of aiding in the construction of such railroad as prayed for in said petition;" and that the mode of the appropriation of the money, by subscription or by donation, need not be specified in the petition or the order of the board, or be submitted to the vote.

*Held,* also, that the intention was sufficiently expressed to levy the tax for the year 1873.

SAME.—*Payment of Amount of Tax to Company After it has been Enjoined.*—Where the collection of a tax levied in a township in aid of the construction of a railroad had been enjoined, some of the persons taxed having voluntarily paid to the railroad company the amount assessed against them, and taken from the company stipulations that they should be released from an equal amount that might thereafter be levied against them ;

*Held,* that a tax thereafter levied upon new proceedings was not thereby vitiated as against persons who did not so pay to the company ; and that the company had no legal right to the money thus paid, as the stock had not been subscribed for or the donation made.

From the Miami Circuit Court.

*H. J. Shirk* and *J. Mitchell,* for appellants.

*J. S. Collins* and *N. O. Ross,* for appellees.

WORDEN, J.—On July 9th, 1872, a petition signed by over

twenty-five freeholders of the township of Richland, in the county of Miami, was filed with the board of commissioners of that county, setting forth that the Detroit, Eel River, and Illinois Railroad Company was a duly organized company under the laws of this State, and that the line of the railroad of said company ran through that township, and that the construction thereof would be of great benefit to that township, praying that the township might make an appropriation of the sum of ten thousand five hundred dollars to aid in the construction thereof, said amount not exceeding two per centum upon the amount of taxable property of said township, as shown on the tax duplicate, etc., and praying that the board take the necessary steps for that purpose, etc.

The board thereupon, having taken the petition under advisement, ordered an election, " for the purpose of taking the votes of the legal voters of the said township upon the subject of appropriating ten thousand five hundred dollars of money by said township," to aid the said railroad company in the construction of the railroad of the company as prayed for in the petition.

The election was accordingly held, due notice thereof having been given, and resulted in a majority of fifty in favor of the appropriation.

The board of commissioners, on June 11th, 1873, made an order, which, after reciting the previous proceedings in that behalf, is as follows:

" It is therefore ordered that a tax of seventy one hundredths of one per cent. be and the same is hereby levied and ordered to be collected upon all the real and personal property in said township of Richland liable to taxation for state and county purposes, and that said tax shall be collected in all respects as other taxes are collected for state and county purposes."

The tax was accordingly placed upon the tax duplicate of the county for the year 1873, by the auditor of the county, for collection.

This action was brought by the appellants, who were taxpayers of Richland township, against the auditor and treasurer

of the county and the railroad company, to enjoin the collection of the tax. The railroad company filed an answer to the complaint, to which the plaintiffs demurred for want of sufficient facts, but the demurrer was overruled, and the plaintiffs excepted. The plaintiffs declining to reply or plead further, final judgment was rendered for the defendants.

The pleadings in the cause are lengthy, and need not be set out in order to an understanding of the questions involved. It is objected, first, that the statute authorizing aid to railroads by donations and taking stock by counties and townships, etc., (3 Ind. Stat. 389) is unconstitutional and void. The constitutionality of this statute was so fully considered by this court in the case of *The Lafayette, Muncie, and Bloomington R. R. Co.* v. *Geiger,* 34 Ind. 185, followed by that of *John* v. *The Cincinnati, Richmond, and Fort Wayne R. R. Co.,* 35 Ind. 539, and some subsequent cases, that the question can not be considered an open one in this State. We shall not, therefore, enter upon a re-examination of the question. We may observe, however, that since the cases in 34 and 35 Ind. were decided, the question has been again before the Supreme Court of Iowa, and their former ruling sustaining such legislation, in the case of *Stewart* v. *The Board of Supervisors of Polk Co.,* 30 Iowa, 9, followed. *Jordon* v. *Hayne,* 36 Iowa, 9. Since that time, also, the question has been elaborately considered by the Supreme Court of Kansas, and the constitutionality of similar legislation upheld. *Leavenworth County* v. *Miller,* 7 Kan. 479. Like decisions have also been since made by the Supreme Court of the United States. *Railroad Company* v. *County of Otoe,* 16 Wal. 667; *Olcott* v. *The Supervisors,* 16 Wal. 678; *Township of Pine Grove* v. *Talcott,* 19 Wal. 666.

In the case of *John* v. *The Cincinnati, Richmond, and Fort Wayne R. R. Co., supra,* this court stated briefly the ground on which it was supposed that the legislation must be upheld. For the purpose of showing a similarity of views entertained by the Supreme Court of the United States, as well as that the question should be regarded as settled, we make the following extract from the opinion of the court in

the case of *Railroad Company* v. *County of Otœ, supra:* "No one," says the court, "questions that the establishment and maintenance of highways, and the opening facilities for access to markets, are within the province of every state legislature upon which has been conferred general legislative power. These things are necessarily done by law. The state may establish highways or avenues to markets by its own direct action, or it may empower or direct one of its municipal divisions to establish them, or to assist in their construction. Indeed, it has been by such action that most of the highways of the country have come into existence. They owe their being either to some general enactment of a state legislature or to some law that authorized a municipal division of the state to construct and maintain them at its own expense. They are the creatures of law, whether they are common county or township roads, or turnpikes, or canals, or railways. And that authority given to a municipal corporation to aid in the construction of a turnpike, canal, or railroad is a legitimate exercise of legislative power, unless the power be expressly denied, is not only plain in reason, but it is established by a number and weight of authorities beyond what can be adduced in support of almost any other legal proposition. The highest courts of the states have affirmed it in nearly a hundred decisions, and this court has asserted the same doctrine nearly a score of times. It is no longer open to debate."

The provision of sec. 6 of the tenth article of the constitution, that "no county shall subscribe for stock in any incorporated company, unless the same be paid for at the time of such subscription," if held applicable to townships, has not been violated in this instance, as here it was intended to raise the money before the subscription or donation should be made.

The second objection to the tax is, that it does not appear, from the petition and proceedings, that the aid was asked, or was to be given, for the construction of the road in that (Richland) township. It does appear, however, that the road was to run through that township, and the aid was to be given for its construction. As at present advised, we are not inclined

to the opinion that when aid is given by a county or township for the construction of a railroad running through the same, the money must necessarily be expended upon that part of the road lying in the county or township. But this point need not be, and is not, decided. If the money must be applied in the county or township, and if, in this case, after the township shall have made her subscription or donation, the company shall attempt to apply the money elsewhere, she can be enjoined from so doing and compelled to make a proper application. There is no force in this objection.

It is objected, in the third place, that as the "road was already constructed through Richland township, and the cars running thereon, the law does not authorize aid to be voted it by the township." Here, again, we need not determine whether, if the road had been entirely completed through the township, the aid could have been voted. It appears from the pleadings that while the road was so far constructed as to enable the company to run trains regularly across the township, it was not thoroughly ballasted, and has been needing and receiving ballasting since. For aught that appears, it may have required the full amount of aid proposed to be furnished by the township to fully complete the road through that township. This objection is without foundation.

It is objected, fourthly, that "the levy of the tax is void because the petition does not specify whether the aid shall be by a subscription to the capital stock, or by a donation." The petition in this respect is in conformity with the statute. By the statute, the vote is "to be taken upon the subject of appropriating money, by such county or by such township, for the purpose of aiding in the construction of such railroad, as prayed for in said petition." By the terms of the statute, it is not required that the mode of making the appropriation, whether by subscription or donation, shall be submitted to vote. The mode is to be determined upon afterward. Some members of the court are of the opinion that if the question of appropriation, and also the mode of making it, had been submitted to vote, and the tax levied in pursuance of it, the

proceedings would have been valid. But all are agreed that the proceedings in this case were in accordance with the statute and valid. See *The State, ex rel. Scobey,* v. *Wheadon,* 39 Ind. 520.

We proceed to the fifth objection, which is, that " the levy of the tax is void, because the order of the board of commissioners does not specify for what year it is made, and further, does not specify the purpose to which the tax is to be applied." This objection is without foundation. The order of the board, which has been heretofore set out in this opinion, is preceded by a recital of the previous proceedings, and, although it does not, in terms, specify the object and purpose of the tax thus ordered to be levied and collected, there can be no mistake or misapprehension as to the purpose. It was not necessary in that order to specify whether the aid should be by way of subscription or donation. When the money is raised and ready to be applied, it will be time to determine that question. As the levy was ordered at the session of the board when they determined the amount to be charged for county purposes for the year 1873, and as it was ordered that the tax be collected in all respects as other taxes are collected for state and county purposes, we think it was intended that this tax should be levied and collected for that year.

This brings us to the sixth and last objection made to the tax. There had been a previous tax assessed in that township on a vote taken to furnish aid to the same railroad company, the collection of which had been enjoined by the judgment of the proper court, the judgment remaining in force. But some of the persons thus previously assessed had voluntarily paid the amount assessed against them, although the collection had been enjoined, to the railroad company, and had taken from the company stipulations that the parties thus paying should be released from the payment of an equal amount that might thereafter be levied against them respectively, to aid in the construction of the road. This, it is claimed, vitiates the entire tax. We are, however, of a different opinion. The railroad company had no legal right to the

money or control over it, the stock not being subscribed for, nor the money paid to them by way of donation. *The Board of Comm'rs of Crawford Co.* v. *The Louisville, etc.,* R. *W. Co.,* 39 Ind. 192; *Sankey* v. *The Terre Haute, etc., R. R. Co.,* 42 Ind. 402. Perhaps such payments and stipulations between the railroad company and the tax-payers would not have the effect of releasing the latter from the payment of the full amount of taxes that might be subsequently assessed against them for aid to the same railroad. If they would not, then it is clear that such payments on the one hand, and stipulations on the other, cannot vitiate the tax. But the question here is not whether the parties who thus paid on the former assessment can be released to the extent of the payments thus made. There is nothing to show but that the stipulations of the railroad company can and will be carried out. The arrangement, if carried out, will work equality and justice, and will wrong no one. Those who thus paid will have paid somewhat in advance of their more unwilling neighbors, and perhaps more than their relative share of the burthen; but those who did not pay were not injured by, and have no right to complain of, this.

We have thus considered all the questions made in the cause, and find no error in the record.

The judgment below is affirmed, with costs.

BIDDLE, J.—I cannot concur in this opinion. The act is unconstitutional.

1. The taking effect of the law is made to depend on a majority of the local vote in the county or township.

The constitution declares, that "no law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution." Sec. 25, art. 1.

There is no authority provided in the constitution that a local majority shall give effect to a law; but it expressly declares, that "the legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives." Sec. 1, art. 4.

No legislative power, only the elective power, is retained in the voter. It is granted to the General Assembly, the members of which are elected for that particular purpose. They take an oath to support the constitution, and are responsible over to their constituencies. They are not allowed to subserve their private interests. By the act in question, the voter exercises a legislative power, when he is not elected for that purpose, takes no oath, is not responsible to any one, and is not the representative of any one but himself. He votes, and has the right to vote, according to his private interests; and thus he gives effect to a law which taxes the minority of voters against their consent, and without the consent of their representatives. Rights cannot be thus taken away, or impaired. Franchises, offices, privileges, may be granted or denied by majorities, but rights cannot be invaded by that means. Favors may be granted, but not by taking away the rights of others. It is the first and highest duty of a government to protect the rights of minorities. No vested right must be disturbed by fancied notions of policy or expediency. It is fixed by law. This act is not a law; it is no more than a proposition to become a law.

2. The act is both local and special.

The constitution declares, that "the General Assembly shall not pass local or special laws, in any of the following enumerated cases." Sec. 22, art. 4. And amongst which enumerated cases is the following: "For the assessment and collection of taxes for state, county, township, or road purposes."

The tax in question is for road purposes, and directly against the constitution. By this act we have a patch-work of local and special laws, depending for their effect upon local and fluctuating majorities, instead of a system of general and uniform laws, depending upon the authority of the General Assembly. The act is a dead letter until it receives life from a majority of votes. On the face of it, a court cannot tell when or where it is in force, or whether in force at all. A rule of action which a court cannot know, without first hav-

ing a fact proved, is not a law. And by this act powers are granted to counties and townships which cannot be exercised by the General Assembly itself. No one for a moment will contend that the legislature could constitutionally pass a local and special law, making the assessment and collection of taxes for state, county, township, or road purposes, depend for its taking effect upon a local majority of a county or township; yet this decision allows it to be done for the benefit of a railroad, which is held as private property. If it cannot be done for a public highway, much less can it be done for a private railroad. There is no analogy between a public highway and a railroad, except that they are both alike means of passage. A public highway is created by law, and abolished by law. The railroad to which this aid is sought to be given is not created by law. Simply the right to build it is granted by law. It cannot be abolished by law, nor can its abolishment be prevented by law. It may roll away its stock, carry off the aid granted to it, take up its rails, and abandon its way, and thus abolish itself in spite of law.

The easement in a highway is in the public; the right of way in a railroad is private. All persons have a right to travel on a public highway, at all times of the day and night, without payment; no person can travel on a railroad at any time without payment, and then only at such hours as the railroad company pleases to go and come. A highway is open and free to all by law; a railroad is operated by private directors, and under the control of its owners. The property in a railroad differs in no respect from other private property, except that the law has a right to regulate its use as a common carrier. That railroads are great and noble enterprises, is true; but the legislature has no more constitutional power to give them aid by a special and local act, dependent for its taking effect upon a local majority, than it has, in a similar manner, to give like aid to a turnpike road, or to a line of steamboats, canal packets, or stage coaches, owned by private companies.

3. The act takes the private property of the citizen against

his consent, without the consent of his representative, and without compensation.

The constitution declares, that " no man's property shall be taken by law without just compensation, nor except in case of the State, without such compensation first assessed and tendered."

In this case, it is absurd to say that the floating speculative benefit to the tax-payer, from the contiguity of the railroad, is " such compensation," within the meaning of the constitution; it means the constitutional standard, and it is idle to contend that it was " first assessed and tendered." Taking a special tax by a local majority for a private use, is taking property without law, and against the constitution. A railroad cannot take the land on which its track is laid " without compensation first assessed and tendered," nor can the legislature grant it such a power. How then can it grant the power to assess and collect a tax to aid in building a railroad, when it cannot grant the right to take even the foundation ?

An act to compel the owner to grant the right of way over his land to a railroad, by a majority vote of the county or township, would scarcely be above ridicule ; yet such an act is not a whit different in principle from the one under consideration ; and money in the citizen's pocket was intended to be, and ought to be, as well guarded from unconstitutional touch as the land in his deed.

There is no power in a government so secret and insidious, and so tempting to exercise, as the power of taxation. It takes various disguises to gain its ends, and none more deceptive than that of public enterprise ; and, when exercised discreetly, no human means have yet been devised to make its burdens completely equal and just. No power, therefore, should be more carefully watched and closely guarded.

It is a trite remark, that taxation and representation should go together, and its triteness proves its truth. Only those who pay the tax should have a right to vote it.

Judge COOLEY, in his work on Constitutional Limitations, says: "Taxes can only be voted by the people's representatives.

They are, in every instance, an appropriation by the people to the government, which the latter is to expend in furnishing the people protection, security, and such facilities for enjoyment as it properly pertains to government to provide.  This principle is a chief corner-stone of Anglo-Saxon liberty ; and it has operated not only as an important check on government, in preventing extravagant expenditures, as well as unjust and tyrannical action, but it has been an important guaranty of the right of private property."

4. The tax is not equal and uniform.

The constitution declares :    " The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation."   By this act aid may be granted to one railroad in a county or township, and denied to another equally meritorious ; and by this tax one railroad may be compelled to aid in building another—its rival.   Would any one contend that a county can assess and collect a tax applicable to one county road, and not to another in the same county ?   How, then, can it assess and collect a tax to aid one railroad, and not another in the same county ?   The plain answer is, that it can do neither.   Such a system of taxation is neither uniform nor equal, but simply irregular and unjust.

5. I do not deny that a state may build, own, and operate a railroad, and assess and collect a uniform and equal tax, by a general law for that purpose ; but a state cannot tax particular counties or townships even to build its own railroad ; much less, then, can it delegate the legislative power to a county or township to assess and collect a tax in aid of a railroad owned as private property ; and, still worse, to make the act take effect upon the contingency of a popular majority.

I do not distinguish between a tax to aid a railroad by donation, and a tax to purchase stock in a railroad for a county or township, when the act is made to take effect on a majority vote.   No law can be thus enacted constitutionally to compel the citizen to contribute his money under the form of a tax to aid in building a railroad, nor to enable a county or township to take stock in a railroad.   Both are alike invasions of his

vested right to securely hold and exercise a discretionary dominion over his property, subject only to constitutional burdens.

In the exercise of all granted and discretionary powers, and in all questions of expediency or policy, and where there is doubt, the judicial department of a state should yield to the legislative ; but where powers are expressly denied, as in this case, there can be no question of discretion, expediency, or policy, and no doubt as to judicial duty.

I am aware of the decisions which go in support of the opinion of a majority of the court in this case ; but, as I think, they are sustained by specious, artificial, and unsound reasoning, and they have not yet become fixed law. Besides, there are several very forcible decisions against it. The question is yet in a transitional state. It is not too late to settle it on a solid constitutional basis.

While it is the duty of a court to carefully interpret and apply the constitution, it must not, under any circumstances, allow it to be overthrown or destroyed ; and, in the opinion of this minority of the court, no line of decisions, however numerous and respectable, that grant a power which is expressly denied by the constitution, ought to be upheld.