Wilson *et al. v.* The Board of Commissioners of Hamilton County *et al.*

WILSON ET AL. *v.* THE BOARD OF COMMISSIONERS OF HAMILTON COUNTY ET AL.

COUNTY COMMISSIONERS.—*Special Sessions, Notice of.—Powers of Auditor.*—Under the statute authorizing the calling of special sessions of boards of commissioners, 1 R. S. 1876, p. 350, note 1, the county auditor has the discretionary power to determine finally and conclusively, first, whether the public interests require a special session ; second, whether the facts of the particular case will authorize and justify the giving of six days' notice of such special session ; and, third, if not, and an emergency shall exist requiring a shorter notice, what notice shall be given, and when such special session shall begin.

SAME.—*Appropriation to Railroad.*—Where a county auditor issues a notice on the 10th day of a certain month, calling a special session of the board of commissioners on the 15th of the same month, for the purpose of hearing applications for appropriations for a certain railroad company named in the notice, and such notice is duly served upon each member of the board on the 12th of said month, and the board convenes in special session on the 15th in pursuance of such notice, said board is lawfully convened in special session and may transact the business which it is called to consider.

SAME.—*Petition.*—Where a petition to a board of commissioners to make an appropriation of money, by taxation of a certain township, to aid in the construction of a railroad, specifies a certain sum, " or a sum equal to two per centum of all taxable property in said township," as the appropriation desired, it sets out the amount of the appropriation with sufficient certainty.

Wilson *et al. v.* The Board of Commissioners of Hamilton County *et al.*

SAME.—*Forfeiture of Right to Tax.—Repeal of Statute.*—So much of section 18 of the 'act of May 12th, 1869, 1 R. S. 1876, p. 740, as provides that the failure of a railroad company to complete its road within three years from the levy of the special tax for its benefit shall work a forfeiture of the right of the railroad company to the tax, and the provision in section 3 of the act of Dec. 24th, 1872, Acts 1872, p. 57, that the tax-payers shall be released from the payment of the levies upon the failure of the railroad company to complete its road within the time limited, are virtually repealed by the supplemental act of January 30th, 1873, Acts 1873, pp. 184 and 185. But, since the taking effect of the latter act, the board of commissioners has had the power, in its discretion, upon a proper application and after a proper notice, to cancel the stock subscription of the township to said railroad.

SAME.—*Insolvency of Railroad Company.—Injunction.*—The insolvency of a railroad company, or its inability to complete its road, does not affect the validity and legality of a special tax previously levied in its behalf, and affords the tax-payers no sufficient grounds to enjoin the collection of the tax by the proper officers.

SAME.— *When Injunction will not Lie.*—An injunction will not lie to prevent the collection of a tax legally assessed, upon the ground that its collection had not been ordered for the purpose of appropriating the same to the object for which it was assessed.

From the Hamilton Circuit Court.

*G. H. Voss, D. Moss* and *R. R. Stephenson,* for appellants.

*T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, J. Stafford, —— Boyd, A. F. Shirts, G. Shirts* and *W. R. Fertig,* for appellees.

HOWK, C. J.—This was a suit by the appellants, against the appellees, to obtain a perpetual injunction. The appellees' demurrer to the appellants' complaint was sustained by the court, and to this ruling the appellants excepted, and, failing and refusing to plead further, judgment was rendered against them for the appellees' costs.

In this court, the appellants have assigned as error, the decision of the circuit court in sustaining the demurrer to their complaint. This alleged error presents for our decision the questions raised by the grounds of demurrer, the most important of which questions, as it seems to us, is

whether or not the facts stated in the appellants' complaint are sufficient to constitute a cause of action in their favor, and to entitle them to the relief prayed for therein.

An intelligible presentation of these questions, and a clear understanding of our decision thereof, render it necessary, we think, that we should first give a summary, at least, of the facts stated and relied upon by the appellants, as constituting their supposed cause of action.

In their complaint, the appellants alleged, in substance, that on the 15th day of July, 1871, they were, and since had been, tax payers and citizens of Noblesville township, in Hamilton county, Indiana; that at the June term, 1872, of the board of commissioners of said county, the said board attempted to levy a special tax upon all the taxable property in said township, to aid the Anderson, Lebanon and St. Louis Railroad Company in the construction of a railroad through said township, and caused the auditor of said county to enter said special tax upon the tax duplicate of said county, for that purpose; that each of the appellants then owned both real and personal property in said township, of the aggregate value, for taxation purposes, thereinafter mentioned, and that said auditor apportioned of said taxes against the same, for the years 1872 and 1873, the sums set opposite their respective names, to wit: (Here followed a table containing the names of the appellants, with the amount of the taxables of each one, and the amount of taxes assessed thereon, for each of the years 1872 and 1873, set opposite his name in appropriate columns, which table we omit.)

The appellants further said that said special tax, with penalties and interest, had been carried forward year after year, on the tax duplicate of said county, by the appellee Pettijohn, as the auditor of said county, and his predecessor in office, which said duplicates were then in the hands of the appellee Baker, as the treasurer of said county;

that the appellee, the said Board of Commissioners, had recently ordered the appellee Baker, as such treasurer, [to collect the said special tax, etc., ?] and he had demanded payment thereof from each of the appellants, and threatened to and would collect the same, if not paid, by distress and sale of property so owned by each of the appellants, and that the said taxes were unpaid and were clouds upon the appellants' titles to said property in said township.

The appellants further said that said special taxes had been levied and entered upon said duplicates of said county, and the collection of the same ordered, under and pursuant to certain proceedings claimed and purporting to have been had before said board of commissioners, and under and in pursuance of its orders, entered upon the record of the proceedings of said board, and on no other authority whatever, a certified copy of all which proceedings and orders of said board was filed with said complaint, as a part thereof.

The appellants averred and charged that said proceedings for the levy and collection of said special taxes, including the order for the election to determine whether such aid should be given, and all matters connected therewith, were and are defective, illegal and void for the following, among other, reasons, to wit :

1. The board of commissioners was not in general session, nor was it legally in special session, on said 15th day of July, 1871, because no summons had been issued by the auditor of said county, nor any other officer of said county, to the sheriff of said county, convening said board on that day, or on any previous day from which said board had adjourned to that day, and that no such summons had been served on the members of said board, nor a majority of them, nor was six days' notice given of said special session, nor was there, in the opinion of the officer calling said board, an emergency declared to exist, requiring a shorter

time, and that said pretended special session of said board was unauthorized by law, and its acts on that occasion were absolutely void and of no binding force or validity whatever.

2. The amount specified in said petition of said petitioners, to said board of commissioners, exceeded two per centum upon the taxable property of said township on the tax duplicate of said county, delivered to the treasurer of said county for the preceding year, 1870.

3. No certain amount was specified in said petition to said board of commissioners, to be appropriated by said township to aid in the construction of said railroad.

4. The said board of commissioners did not grant and appropriate, in aid of the construction of said railroad, the sum of twenty-eight thousand five hundred dollars asked for in said petition, but undertook to appropriate another and different sum for that purpose, without any petition asking it so to do.

5. The said board, at its said June session in 1872, in the matter of said pretended petition presented to it as aforesaid on said 15th day of July, 1871, ordered and adjudged that the sum of twenty-eight thousand two hundred and thirty dollars and thirty cents was two per centum of the taxable property of said township, as the same appeared upon the tax duplicate of said county, delivered to the treasurer of said county, for the preceding year, 1870, and that said sum of twenty-eight thousand five hundred dollars, mentioned in said pretended petition, was a sum in excess of two per centum of said taxable property of said township for 1870, as the same appeared on said tax duplicate. Wherefore the appellants said that said board never acquired jurisdiction of the matter of said pretended petition, and that said sum of twenty-eight thousand two hundred and thirty dollars was so appropriated without any petition asking for it other than said petition for twen-

ty-eight thousand five hundred dollars, and that its said proceedings at its said last named June session were illegal and void.

6. The said Anderson, Lebanon and St. Louis Railroad Company had long since forfeited its right to have or demand said sum or sums of money, so attempted to be appropriated as aforesaid, or any part thereof remaining uncollected, by its failure to complete its said line of railway, ready for use through said township, within three years from the levy of said pretended taxes, or at any time since; and that said board did not give it one year's further time in which to complete the same; by means whereof the appellants and each of them became and were released from the payment of said taxes or any part thereof.

7. The said Anderson, Lebanon and St. Louis Railroad Company did not legally commence work upon said railroad, in said township, within one year after the levy of said pretended special tax, and had never legally done any work on its said railroad, because it never procured the right of way through said township for its said railroad.

8. The notice of the auditor requiring said board to meet in said special session on said 15th day of July, 1871, was issued by him to the sheriff of said county on the 10th day of July, 1871, and by said sheriff served on said board on the 12th day of July, 1871; and that no emergency then existed for the convening of said special session, nor was any such emergency expressed in said notice.

9. The said petitioners, in their petition presented on said 15th day of July, 1871, did not ask that any certain sum of money should be appropriated to said railroad company to aid in the construction of its railroad through said township.

10. The total amount of the taxable property in said township, on the duplicate of said county, as the same appeared on the tax duplicate for 1870, amounted to one

million four hundred and eleven thousand and five hundred and fifteen dollars, and no more, and that said board, at its said June term, 1872, found and adjudged that the sum of twenty-eight thousand five hundred dollars, stated in said petition, was an amount in excess of two per centum on said taxable property.

11. The appellants averred and charged, that to allow the appellees to collect said taxes, would be to authorize an act of gross injustice to the appellants and other tax-payers of said township; because they said that the said railroad company had hitherto wholly failed to complete its said line of railway through said township, was notoriously insolvent, and without any means to enable it to complete its road, and that it had never yet procured the right of way through said township for its said railway, had no ability to do so, and the owners of property through which said road was located would not permit said road to be so completed, unless said right of way was first obtained and paid for.

12. The appellants further averred and charged, that said pretended levy and assessment of said special taxes, to aid in the construction of said railroad, were defective, illegal and void, because the said pretended petition, upon which said pretended taxes were levied, did not ask the said board of commissioners to appropriate any sum of money to aid in the construction of said Anderson, Lebanon and St. Louis Railroad through the said township.

The said board of commissioners had not ordered said county treasurer to collect said taxes for the purpose of appropriating the same, when collected, in aid of the construction of said railroad through said township; wherefore said treasurer should be enjoined from collecting said taxes.

And the appellants further said, that the appellee Baker had advertised the property respectively owned by

them in said township, for sale, and would sell the same, on a certain named day, or soon thereafter, unless restrained from so doing by order of the circuit court. Wherefore, etc.

It will be seen from the foregoing summary of the appellants' complaint, that they have assigned therein twelve numbered causes or reasons, and an additional final cause or reason, which they failed to number, why they claim and insist that the special tax levied and assessed in Noblesville township to enable that township to aid in the construction of a certain named railroad, must be regarded as and was illegal and void, and that the appellees ought to be and must be perpetually enjoined from collecting, or attempting to collect, any part or portion of said special tax, for the purpose aforesaid or any other purpose. These causes or reasons, however, whether numbered or not, may be readily divided and classed, we think, under the following general heads:

1. The alleged illegality of the called session of the board of commissioners, on the 15th day of July, 1871;

2. The alleged defects in, and illegality of, the petition presented to said board at its called session, on July 15th, 1871;

3. The alleged failure of the railroad company to "legally commence work," its insolvency and inability to complete its railroad, and its supposed forfeiture of its right to the sums of money to be raised by the special tax; and,

4. The alleged injustice to the appellants to allow the appellees to collect the special tax, and the purpose of the board in ordering the collection of said tax.

In our examination and decision of the several questions presented by the record of this cause, and the errors assigned thereon, we will consider and pass upon them, as nearly as we can, under the above general heads. We

may premise that the appellants have filed with, and made a part of, their complaint a certified copy of the proceedings of the county board in relation to the levy and assessment of the special tax of which they complain. In many particulars, the allegations of fact contained in their complaint proper can not well be reconciled with the statement of the same matters in said certified copy; and in such cases we shall consider the certified copy as controlling the allegations of the complaint. It is proper, also, that we should state in the outset that this certified copy shows the controversy in this case to be limited to the levy and attempted collection of the first instalment only of said special tax. With these preliminary remarks, we pass now to the consideration and decision of the main questions in the case.

1. It will be readily seen, we think, from the allegations of the complaint proper, as the same are set out in this opinion, and without reference to the certified copy of the orders and proceedings of the county board, that the board of commissioners intended and attempted to levy the said special tax, under and pursuant to the provisions of "An act to authorize aid to the construction of railroads by counties and townships taking stock in and making donations to railroad companies," approved May 12th, 1869.

The proceedings before a county board, precedent and necessary to the lawful levy of such a special tax, under the 1st section of the above entitled act, may be inaugurated before the board " at any regular or special session thereof," by the presentation of a petition signed by the requisite number of freeholders of the proper township. 1 R. S. 1876, p. 736. It is certain, in this case, that when the petition of the freeholders of Noblesville township, asking for the levy of the special tax now complained of, was presented to the Board of Commissioners of Hamilton county on the 15th day of July, 1871, the board was not

in regular session. For the law prescribing the regular terms of boards of county commissioners, in such counties as Hamilton, fixes the regular summer sessions of such boards to commence on the first Monday of June of each year, and to continue not exceeding nine days. 1 R. S. 1876, p. 351, sec. 6. The Board of Commissioners of Hamilton county, therefore, was in special session on the 15th day of July, 1871, when the petition asking the levy of the special tax now in controversy was presented to said board.

The question is fairly in the record, therefore : Was the Board of Commissioners of Hamilton county lawfully convened in special session on said last-named day, when the petition of the freeholders of Noblesville township, asking the levy of such special tax, was presented to said board ? In the numbered reasons, assigned by the appellants in their complaint in this cause, for the position assumed by them as the foundation of their supposed cause of action, that the proceedings by and before the county board for the levy and collection of said special tax, and all matters connected therewith, were and are defective, illegal and void. The reasons numbered 1 and 8 respectively are devoted specially and specifically to the subject now under consideration, namely, the alleged illegality of the special session of said county board, so held as aforesaid on the 15th day of July, 1871. At that time, as now, "An act providing for calling special sessions of boards of county commissioners," approved March 7th, 1863, was the law in force in this State in relation to the subject-matter expressed in the title of said act. 1 R. S. 1876, p. 350, note 1; Acts 1863, p. 19. In section 1 of said act, it was provided "That special sessions of the board of county commissioners of the several counties in this State, may be called whenever the public interests require it—first, by the county auditor," etc. Section 2 of said act declares, that

"At least six days' notice of such special session shall be given, unless, in the opinion of the officer calling the same, an emergency exists requiring a shorter notice; in that case, the officer may fix the time at his discretion." In the 3d and last section of said act, it was provided that "Special sessions of boards of commissioners called in pursuance of this act, shall be governed by the laws now in force regulating the proceedings and defining the powers of county commissioners at special sessions."

Under these provisions, it will be seen that the county auditor is clothed with the power to call "special sessions" of the county board, whenever the public interests require it, of which special sessions at least six days' notice must be given, unless, in the opinion of the auditor, an emergency exists requiring a shorter notice, and in that case the auditor may fix the time at his discretion. It seems to us that the General Assembly of this State, in and by these statutory provisions, have committed to the county officers named in said act, and first to the county auditor, the discretionary right, power and duty to determine finally and conclusively, in each particular case, these three questions:

1. Whether the public interests require a special session of the board of commissioners;

2. Whether the facts of the particular case will authorize and justify the giving of at least six days' notice of such special session; and,

3. If not, and in the opinion of such county auditor first, or other officer named in their order, an emergency shall exist requiring a shorter notice, what notice shall be given, and when such special session shall begin.

When the county auditor, or other county officer acting as authorized by the provisions of the statute, shall have considered, passed upon and determined any or all of these three questions, we think that the decision of such auditor or other officer in regard thereto is and ought to be

final; and that such decision can not thereafter be questioned, annulled, set aside or held void and of no effect. It is not necessary, as we construe the statute, that the auditor or other acting officer, in calling a special session of the county board, upon a shorter notice than six days, should declare in any way, either in such notice or elsewhere in the record, that an emergency existed requiring such shorter notice ; but the fact that such shorter notice was issued by such auditor or other officer will conclusively show that, in his opinion, an emergency did exist requiring the issue thereof. We do not regard the provisions of the 2d section, above quoted, of the statute, in regard to the length of the notice which shall be given of a special session of the county board, as mandatory in their character, but rather as directory, as prescribing the manner in which the county auditor, or other acting officer, may, in his discretion, convene the commissioners in special session, whenever, in his opinion, the public interests may require it. Whatever notice the auditor, or other acting county officer, may give of such special session, and however and whenever such notice may be served, it seems to us that these matters become and are unimportant and immaterial, if, pursuant to such notice so served, the board of commissioners actually meet at the time indicated therein, in special session

The conclusion we have reached in regard to the power of the auditor, or other acting county officer, under the statute above quoted, to determine finally and conclusively, whether the public interests require a special session of the county board, and whether at least six days' notice shall be given of such session, and whether an emergency may exist requiring a shorter notice, is fully sustained, we think, by the decision of this court in the cases of *Oliver* v. *Keightley*, 24 Ind. 514, and *The Board, etc., of Madison County* v. *Brown*, 28 Ind. 161. In the cases cited, the court

gave a construction to an act authorizing county auditors to call special sessions of county boards, approved February 2d, 1855, in section 1 of which act it was provided "That whenever the interest of the county may demand it, the county auditor shall convene the board of county commissioners for that purpose," etc. Acts 1855, p. 87. In the case first cited, it was said of this statute "that the auditor is the person who must determine when the interests of the county require such meeting of the board, and that the court will not review his action in a matter which the statute has committed alone to his judgment."

In the case now before us, the certified copy of the proceedings of the Board of Commissioners of Hamilton county, filed with and made part of the appellants' complaint, shows that the auditor of said county, on the 10th day of July, 1871, issued a notice requiring the county board to meet in special session on the 15th day of July, 1871, "for the purpose of attending to certain important official business, requiring immediate attention, to wit, that of hearing applications for railroad appropriations for the Anderson, Lebanon and St. Louis Railroad Company, from Noblesville, Washington and Wayne townships, in said county;" that this notice was served on each of the county commissioners by the sheriff, on the 12th day of July, 1871; and that, pursuant to said notice, the said Board of Commissioners convened in special session on said 15th day of July, 1871. We are of the opinion, therefore, that the Board of Commissioners of Hamilton county was lawfully convened in special session on said 15th day of July, 1871, for the purpose of receiving, considering and acting upon the petition of the freeholders of Noblesville township, asking that said township might make an appropriation of money to aid the said railroad company in the construction of its railroad in or through said township.

2. It is earnestly insisted by the appellants that the entire proceedings of the county board, in relation to the

levy of the special tax complained of, in Noblesville township, were and are illegal and void, because of certain alleged defects in the petition of the freeholders of said township, on which the said proceedings were founded. It is claimed that this petition was defective and illegal, in this, that the amount specified therein exceeded two per centum upon the taxable property of said township, on the tax duplicate for the preceding year, 1870, and in this, that no certain amount was specified in said petition. This petition and these alleged defects therein were fully considered by this court in the recent case of *Williams* v. *Hall*, 65 Ind. 129; and our conclusion then was, to which ·we adhere, that these alleged defects did not vitiate the peti-· tion. In the opinion of the court, WORDEN, C. J., said : "The fair meaning of the petition was, that the petitioners desired an appropriation of only the sum mentioned, though it might fall short of the two per centum provided for by the statute; but, if it should exceed the amount of the two per centum, then they desired only the amount of the two per centum. This, it seems to us, was a substantial compliance with the statute. No one could have been misled by the petition or notice, nor could any one have voted under any misapprehension of the amount of the appropriation asked for. The petition and notice were sufficient."

In the case at bar, the appellants further object to the sufficiency of said petition, because they say that it did not ask the county board to appropriate any sum of money to aid in the construction of said railroad through said township. The petition is loosely worded, and was not drawn with legal accuracy and precision ; but it seems to us that the object and purpose of the petitioners could not be misunderstood by any one, and certainly were not misunderstood by the county board, as is clearly shown by the record of their proceedings on said petition.

3. It is alleged by the appellants that the railroad com-

pany did not "legally commence work" on its railroad, in said township, within one year after the levy of the tax, and had never legally done any work, because they say that said company had never procured the right of way through said township for its railroad. The reason given will not, we think, sustain the allegation. There is no averment in the complaint that the company had not commenced and done work on its railroad, in said township, within one year after the levy of the tax; but the assumption is that the work was not legally commenced and done, because the company had not procured the right of way for its road through said township. We know of no statutory provision which would authorize such an assumption.

But it is claimed that the railroad company had forfeited its right to the appropriation asked for, by reason of its failure to complete its railroad ready for use through said township, within three years from the levy of the special tax, and that the county board had not given said company one year's further time within which to complete its road. In section 18 of the above entitled act of May 12th, 1869, it was provided that the failure of the railroad company to complete its railroad ready for use within three years from the levy of the special tax shall forfeit the rights of the company thereto, unless the county commissioners shall give not to exceed one year's further time in which to complete the same. 1 R. S. 1876, p. 740. By section 3 of an act supplemental to said act of May 12th, 1869, approved December 24th, 1872, it was provided that in all cases where levies of taxes had been made pursuant to the former act, and remained uncollected, and the railroad company had failed to commence work on or complete its railroad as required by said act, the tax-payers or parties against whom said levies stood charged should be released and discharged from the payment thereof. Acts 1872, p. 57.

By section 2 of another act supplemental to the aforesaid act of May 12th, 1869, approved January 30th, 1873, the Legislature seems to have changed entirely the policy of the State towards railroad companies, which had not completed their roads within three years from the levy of the county or township taxes in aid of such companies; for, instead of an absolute forfeiture in such cases of all rights of such companies to the county or township appropriations, as the previous Legislature had provided in said section 2, it was provided that "if said railroad company shall not, within three years after said tax has been placed upon the duplicate of the proper county for collection, have expended in the actual construction of said railroad in said county or township, an amount of money equal to the amount of money to be donated to or stock to be taken in said railroad company by said county or township, the board of commissioners may, in their discretion, make an order annulling and cancelling such subscriptions of stock or donations of money, upon the application of twenty-five freeholders of the county through which said railroad shall pass, upon said freeholders having given thirty days' public notice immediately preceding the term of the commissioners' court at which said application is to be made, of their intention to make such application." Acts 1873, pp. 184 and 185.

It seems to us that the statutory provisions last quoted are utterly inconsistent, and can not be reconciled with, the doctrine of forfeiture on account of the non-completion of the railroad, as declared in said section 18 of the aforesaid act of May 12th, 1869, and the provision that the taxpayers or parties against whom the special taxes stood charged should be released and discharged from the payment thereof, upon the failure of the railroad company to complete its road within the time limited in said section 18, contained in said section 3 of the said supplemental

act of December 24th, 1872 ; and therefore we think that these provisions of the supplemental act of January 30th, 1873, as the later expression of the legislative will, virtually repealed so much of said section 18 as provided that the railroad company, by its failure to complete its railroad ready for use within the time limited in said 18th section, would thereby forfeit its right to the appropriation asked for, and also the provision in said section 3 of said act of December 24th, 1872, that, upon the failure of the railroad company to so complete its road within the time limited, the tax-payers and parties against whom said levies stood charged should be released and discharged from the payment thereof. Under the provisions above quoted of said section 2 of the supplemental act of January 30th, 1873, the question as to what should be done in the event that the railroad company had not, within three years after the tax had been placed on the duplicate for collection, expended, in the actual construction of its road in the county or township, an amount of money equal to the amount of money to be donated to, or stock to be taken in, the railroad company by the county or township, was committed by the Legislature to the discretion of the board of commissioners, upon the application of a certain number of the freeholders of the county, after thirty days' public notice had been given of their intention to make such application. The proviso in said section shows very clearly, we think, that the Legislature did not intend that there should be thereafter any forfeiture by the company of its right to the appropriation, when the amount of work was done. This proviso reads as follows :

"*Provided*, further, that whenever it is shown to the satisfaction of the board of commissioners that the amount of work done by any railroad company in any county or township taking stock in or donating money to such rail-

road company is equal to the stock taken or donation made, it shall be the duty of the board of commissioners to order said tax to be collected at once, as though the same had never been suspended."

By an act to amend the said supplemental act of January 30th, 1873, approved March 11th, 1875, the aforesaid section 2 of said supplemental act, was so amended as to provide that where stock had been taken, or donations made, by any county or township, for the purpose of aiding in the construction of any railroad, pursuant to the aforesaid act of May 12th, 1869, and the special tax authorized thereby had been placed upon the duplicate of the proper county for collection, "if said railroad company shall not, within five years after said tax has been placed upon the duplicate for collection in the proper county, have expended, in the actual construction of said railroad in said county or township, an amount of money equal to the amount of money to be donated to, or stock to be taken in, said railroad company by said county or township, the board of commissioners may, in their discretion, make an order annulling and cancelling such subscription of stock or donation of money," upon the same application and after the same notice as were provided in the original section 2, before this amendment. Then follows a reenactment of the same proviso, set out above, as in the original section 2, and then follows this additional proviso, to wit:

"*And provided, further,* That the provision of this act shall not apply to any railroad, in any case, where three years or more have elapsed since the tax, in aid thereof, shall have been placed on the tax duplicate for collection."

By virtue of a section declaring an emergency, this amendatory act became a law on the day of its approval, to wit, March 11th, 1875. Acts 1875, Reg. Sess., pp. 121 and 122.

Afterward, by an act entitled "An act extending the time for the completion of railroads, in all cases where

townships have made, or may hereafter make an appropriation of money to aid any railroad company in constructing its road," approved March 7th, 1877, it was enacted "That any railroad company, now organized under the laws of the State of Indiana, to which any township has made or may hereafter make an appropriation of money, to aid such company in constructing a railroad in or through such township, by taking stock in or donating money to such company, shall have five years from the passage of this act in which to complete such railroad for use, and when so completed such company shall be entitled to such appropriation : *Provided,* That this act shall not be so construed as to entitle any company to such appropriation, that has failed to commence work upon its road within two years from the levying of the special tax for such purpose." Acts 1877, Reg. Sess., p. 111.

We have now given a full summary of all the legislation of this State bearing upon the question now under consideration, and it is very clear therefrom, that, under the allegations of the complaint in this case, the Anderson, Lebanon and St. Louis Railroad Company has never forfeited its rights to the appropriation from said Noblesville township, to aid in the construction of its railroad. It appears from the record that the special tax in controversy was levied on the 15th day of June, 1872. Before the expiration of three years from that date, those sections of the statutes which provided that the failure of the company to complete its railroad ready for use, within three years from the levy of the special tax, should forfeit the rights of the company thereto, and that the tax-payers should be thereby released and discharged from the payment of such tax, had been virtually repealed, as we have seen, by the supplemental act of January 30th, 1873, which took effect from and after its passage. Since the approval of that statute, the board of commissioners has had the power, in

its discretion, upon a proper application and after proper notice, to annul and cancel the stock subscription of Noblesville township to said railroad company; but it is not claimed by the appellants that this has ever been done. On the contrary, they complain, in this case, that the county board has ordered and directed the county treasurer to collect this special tax.

It seems to us that the alleged insolvency of the railroad company and its alleged inability to complete its road do not, in any manner, affect the validity and legality of the special tax complained of, and do not afford the appellants any sufficient grounds for enjoining the collection of the tax by the proper officers of the county.

4. But it is finally urged, as a ground for the relief prayed for in this case, that the board of commissioners had not ordered the collection of the special tax for the purpose of appropriating the same to aid in the construction of said railroad through said Noblesville township. The appellants do not aver in their complaint that the county board, or any county officer, will appropriate or apply the special taxes, when collected, to any improper or illegal purpose. The collection of a tax, illegally assessed, may properly be enjoined. This is settled by numerous decisions of this court. But the special tax, the collection of which the appellants seek to enjoin in this action, was legally assessed, as we have shown, we think, in this opinion. We know of no case in which the collection of a tax, lawfully assessed, has been enjoined, upon an allegation merely that its collection had not been ordered, for the purpose of appropriating the same to the object for which it was assessed. It might well be, for aught that the appellants have alleged in their complaint, that the whole or a large portion of the amount of the Noblesville township appropriation had been properly paid to the railroad company out of other moneys in the

Wilson *et al. v.* The Board of Commissioners of Hamilton County *et al.*

county treasury, in advance of the collection of said special tax; and, in that event, under the provisions of section 15 of the original act of May 12th, 1869, the county board would be fully authorized, we think, to order the collection of said special tax, for the purpose of refunding to the county the amount of said advanced payment, "when such special tax shall have been collected." 1 R. S. 1876, p. 739.

Upon the whole case, we are of the opinion that the court committed no error in sustaining the appellees' demurrer to the appellants' complaint.

The judgment is affirmed, at the appellants' costs.

BIDDLE, J.—I dissent on constitutional grounds, as stated in the case of *Petty* v. *Myers,* 49 Ind. 1.

SCOTT, J.—I am unable to agree with the majority of the court in the conclusion reached in this case.

I regard the power conferred on boards of county commissioners by the act of May 12th, 1869, 1 R. S. 1876, p. 736, as one, if rightfully conferred, to be used in strict conformity to the statute. I am of opinion that such boards have no jurisdiction unless acquired in strict compliance with the statute. Such boards can only acquire jurisdiction in such a case by a petition which is in conformity with the statute, and, if the petition be not sufficient to confer jurisdiction, every act done subsequently is void.

The 1st section of the act is as follows :

" SEC. 1. That whenever a petition shall be presented to the board of commissioners of any county in this State, at any regular or special session thereof, signed by twenty-five freeholders of any township of such county, asking such township to make an appropriation of money to aid a railroad company, named in such petition, and then duly organized under the laws of this State, in

constructing a railroad in or through such township, by taking stock in or donating money to such company to an amount specified in such petition, not exceeding, however, two per centum upon the amount of the taxable property of such township on the tax duplicate of the county delivered to the treasurer of the county for the preceding year, it shall be the duty of such board of commissioners, after being satisfied that such petition has been properly signed by the requisite number of freeholders of such township as aforesaid, to cause the same to be entered at full length upon their records."

The petition is as follows:

" State of Indiana, Hamilton County, sct.:

"To the Hon. Board of Commissioners in and for said county:

" We, the undersigned citizens, freeholders of Noblesville township, would respectfully petition your honorable board, and represent that we desire to raise by taxation and appropriate the sum of twenty-eight thousand five hundred dollars, or a sum equal to two per centum of all the taxable property in said township, to the Anderson, Lebanon and St. Louis Railroad Company, by taking stock in that company to that amount, the said railroad company having been legally incorporated under the laws of this State, and whose line of road passes through our township; and we ask your honors to take such steps as are contemplated to be taken by boards of commissioners under the statute, in this behalf made and provided, approved May 12th, 1869, (see Acts 1869, p. 92,) and your petitioners will ever pray," etc. Here follow the names of subscribers, eight hundred or more.

The law requires that the petition ask that the township make an appropriation to aid a railroad company in constructing a railroad through such township.

The petition does not ask that such township make an

appropriation of money to *aid* a railroad company in constructing a railroad through such township, but asks to appropriate money to take stock in a railroad company, whether as an investment or for some other purpose is not stated. I am of opinion that this uncertainty is substantial and fatal.

The law requires that the petition should state a specified amount, not exceeding two per centum upon the amount of taxable property of the township on the tax duplicate for the preceding year.

"No year is mentioned in the petition and it might mean the current year or the year preceding, upon which the tax had recently been paid. This uncertainty is fatal." *The Detroit, etc., Railroad Co.* v. *Bearss*, 39 Ind. 598.

It can not be said, either from the words of the petition or from any fair inference, that the Anderson, Lebanon and St. Louis Railroad Company had not completed its line of railroad. It is not stated in the petition that the railroad was in process of construction or was completed in whole or in part. This uncertainty is fatal.

The learned Chief Justice, in pronouncing the opinion of the majority of the court, uses the following language:

"In the case at bar, the appellants further object to the sufficiency of said petition, because they say that it did not ask the county board to appropriate any sum of money to, aid in the construction of said railroad through said township. The petition is loosely worded, and was not drawn with legal accuracy and precision, but it seems to us that the object and purpose of the petition could not be misunderstood by any one, and certainly were not misunderstood by the county board, as is clearly shown by the record of their proceedings on said petition."

I can not concur in this view of the question. The question is not whether the board of commissioners understood or misunderstood the object and purpose of the pe-

tition, but was the petition, on its face, sufficient to give the board of commissioners jurisdiction? Where a statute, in effect, strips an individual of his property, or which in any way affects the same, its requirements must be strictly complied with. The requirements of the statute are the very conditions upon which the owner is divested of his title and property, and it does not lie with the court to consider whether the statute has been nearly complied with; but the question is, have the provisions of the statute been literally pursued and strictly complied with?

I am of opinion that the petition in the case at bar was utterly and wholly defective, and that all the subsequent proceedings of the board of commissioners thereunder were void.

. It appears by the complaint and exhibits, that one A. P. Hess was formerly the treasurer of Hamilton county, Indiana; that said Hess advanced money to the finance committee of the Anderson, Lebanon and St. Louis Railroad Company, with an understanding and agreement that he should be reimbursed out of the railroad tax when the same should be due the company; that said Hess was, at the expiration of his term of office, a defaulter; that his sureties were compelled to pay his defalcation; that he was adjudged a bankrupt; that an assignee was appointed to take charge of his estate; that the District Court of the United States for the district of Indiana ordered the assignee to collect the amount advanced by Hess to the finance committee of said railroad company, from the treasurer of Hamilton county, when the same should be collected, and that said assignee should hold such amount so collected for the benefit of said Hess' estate and bondsmen. On the 11th day of December, 1879, the Board of Commissioners of Hamilton county, on the petition of the bondsmen of said Hess, made the following order. After reciting the petition of the bondsmen and the decree of the District Court in full, the order concludes:

" By the terms of which decree Peter C. Sawyer, as assignee of said A. P. Hess, is ordered and directed to collect of the treasurer of Hamilton county, Indiana, for the benefit of said A. P. Hess' estate and his bondsmen, said sum of $7,450, to be paid by said treasurer out of said raidroad funds *as fast as the same may be collected by said treasurer.*

"And whereas it appears that said railroad company, nor its receiver, were made parties to the proceedings had before said board of commissioners on the 11th day of June, 1879, in which said treasurer was ordered to collect said railroad funds for the benefit of said Hess and his bondsmen, neither was said railroad company or its receiver a party to the proceedings and decree rendered on the 5th day of November, 1879, before the Hon. WALTER Q. GRESHAM, Judge of the District Court of the United States for the District of Indiana : It is therefore ordered, adjudged and decreed by the board that the Treasurer of Hamilton County, Indiana, be required, on and after the 1st day of February, 1880, to comply with the order from the District Court of the United States, herein set out, unless he is on or before said date duly restrained and enjoined from complying therewith ;. and the auditor of said county is hereby ordered and directed to make out a certified copy of this order, and cause the same to be delivered to the president and receiver of said railroad company as soon as the same can be done."

I am of the opinion that this order is void, for the reason that it is a misappropriation of the money. Conceding the tax to have been legally assessed, the railroad company is not entitled to receive it from the county until its road shall have been completed, and Hess and his assignee and bondsmen are not entitled to receive the money until such time as the railroad company shall show itself entitled to receive the same from the county.  Under the order of

the board of commissioners, the money is to be paid to the assignee of Hess, the former county treasurer, for the benefit of his estate and bondsmen, immediately on its collection, such order making the collection of the tax and the payment of the money over to the assignee of Hess contemporaneous acts. I am of the opinion that the board and the treasurer ought to be enjoined from paying the money to said assignee until it be shown that the railroad company is legally entitled to receive it.

On this latter branch of the case, the learned Chief Justice, in pronouncing the opinion of the majority of the court, uses the following language:

" It might well be, for aught that the appellants have alleged in their complaint, that the whole or a large portion of the amount of the Noblesville township appropriation had been properly paid to the railroad company out of other moneys in the county treasury, in advance of the collection of said special tax; and in that event, under the provisions of section 15 of the original act of May 12th, 1869, the county board would be fully authorized, we think, to order the collection of said special tax, for the purpose of refunding to the county the amount of said advanced payment, ' when such special tax shall have been collected.'. 1 R. S. 1876, p. 739."

I can not agree to this part of the opinion of the majority, for the reason that it appears from the order, above quoted from the record in this case, that the object in collecting the special tax is not for the purpose of refunding to the county the amount of any advanced payment made under section 15 of the original act of May 12th, 1869. If the county made an advanced payment under section 15 of the original act of May 12th, 1869, why should the money be paid to Hess or his assignee or bondsmen? But it appears from the complaint that said Hess paid said money to the finance committee of the railroad company

on his own motion and responsibility, and without any order or authority from the board of commissioners.

With great respect for the majority of the court, I am compelled to say that I regard the tax sought to be collected as illegal. The order of the board of commissioners made on the 11th day of December, 1879, in my opinion, was wholly unauthorized by law, and I regard it as an attempt, on the part of the board, to compel the citizens and tax-payers of Noblesville township, Hamilton county, Indiana, to contribute their money, not for the purpose of aiding in the construction of a railroad, but for the purpose of reimbursing the unfortunate gentlemen who were the bondsmen of A. P. Hess against their liability for his defalcation, growing out of his over-confidence in the finance committee of the Anderson, Lebanon and St. Louis Railroad Company.

BIDDLE, J., concurs with the dissenting opinion delivered by SCOTT, J., and also dissents upon grounds stated in his dissenting opinion in the case of *Petty* v. *Myers*, 49 Ind. 1.