ALVIS ET AL. *v.* WHITNEY ET AL.

RAILROAD.—*Tax to Aid in Construction.*—Where the county commissioners, on a proper petition, ordered an election to be held in a township of the county, to determine whether an appropriation should be made by the township to aid in the construction of a railroad, and the election was held, and resulted in favor of the appropriation; and afterward the boundary line between the township voting to make the appropriation and an adjoining township was changed, so as to detach from the latter a strip of land one-half a mile wide and annex the same to the former; and the railroad, after the vote was so taken, was located and built in and through the strip of territory so annexed, without passing into or through the territory which constituted the township at the time the vote was taken;

*Held,* that no tax to aid in the construction of the railroad, as it was located and built, was authorized to be levied by the vote taken.

*Held,* also, that, to authorize the levy, the road should be built within the territory of the township as it existed at the time the vote was taken.

From the Gibson Circuit Court.

*C. Denby, A. C. Donald, C. Baker, O. B. Hord,* and *A. W. Hendricks,* for appellants.

*G. V. Howk, W. W. Tuley,* and *O. M. Welborn,* for appellees.

BUSKIRK, J.—This action was commenced by the appellants against the appellees, to enjoin the collection of a railroad tax assessed in White River township of Gibson county, the appellees here and defendants below being the treasurer of said county and the railway company in aid of whose road the tax was assessed.

The complaint was demurred to by the appellees on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and appellants refusing to plead further, final judgment was rendered for appellees and against appellants. Proper exceptions were taken.

The ruling of the court below in sustaining the demurrer to the complaint is the only error assigned, and for this a reversal of the judgment is asked.

The facts averred in the complaint, and necessary to a

clear understanding of the question presented for our decision, are these:

1. At the June Term, 1869, of the Board of Commissioners of Gibson county, an order was made by said board, upon the proper petition, directing an election to be held in White River township of said county, to determine whether an appropriation should be made by said township in aid of the construction of The New Albany and St. Louis Air Line Railway Company.

2. The time fixed, in said order, for the holding of said election was July 12th, 1869, and the vote was taken and resulted in favor of the appropriation.

3. Afterward, at the September session of 1869, of said board of commissioners, on the petition of sundry citizens of White River and Patoka townships of said county, the boundary line which divided said townships was changed, detaching from Patoka township a strip of its territory one-half mile in width and annexing the same to the said White River township.

4. That at the June session, 1870, of said board, the tax sought to be enjoined was levied upon the taxable property within said township (including that of the appellants), for the purpose of carrying into effect the vote so taken.

5. That the road, prior to the filing of the appellants' complaint, was not only located, but actually built, in and through the strip of territory so annexed to White River township, but without passing into, through, or touching the territory which constituted said township at the time said vote was taken or at any previous time.

The complaint does not show whether the location and construction of the road through the annexed strip were before or after the levy of the tax sought to be enjoined.

It is conceded by the learned counsel engaged in this cause, that it is one of first impression, that the case is barren of authority. It is stated by counsel that after a diligent and thorough examination of text books and reports,

they have been unable to find anywhere an adjudicated case in point, or even an analagous authority.

We have concluded to permit counsel to state their respective positions in their own language. The argument has proceeded in the following order: 1. Original brief by counsel for appellant. 2. Brief by counsel for appellees in answer to positions assumed in original brief. 3. Supplemental brief by counsel for appellants in reply to positions taken by counsel for appellees. The positions assumed in original brief will sufficiently appear from the others. We shall, therefore, quote from the brief of appellees and the supplemental brief of appellants.

Counsel for appellees argue as follows:

"The matter in controversy between the parties to this action is fairly presented to this court under the first error assigned; and to the consideration of this matter, thus presented, the attention of this honorable court is respectfully invited. Does the appellants' complaint state facts sufficient to constitute a cause of action? This is the real and only question in this case. The appellants allege that the tax assessed, of which they complain, is illegal for two reasons; first, because there is no law which authorizes a tax to be assessed for such purposes. This objection to the tax assessed has been settled adversely to the appellants, in the case of *The Lafayette, etc., Railroad Co.,* v. *Geiger,* 34 Ind. 185, and nothing further need be said about it by the appellees.

"The second reason by the appellants for the illegality of the tax, is this: 'because, although said railroad was located and built through the territory so annexed to White River township, after said vote was taken, it is not located to run into or through the territory, which constituted said township when the vote was taken, or at any time prior thereto.' Upon this second reason, if it be a reason, the appellants now hang all their hopes of obtaining a reversal of the judgment in the case. The appellants concede that the appellee, the said Air Line Railway Company, has located and built its railroad through said White River township, as the said

township was constituted at the time said railroad tax was levied; but they say that, because the said railroad does not run into or through said township, as it was constituted when the vote was taken for and against said railroad tax, therefore the said tax was and is illegal. This is the whole argument of the appellants. They liken their case to that of a subscription upon a condition precedent; and upon this hypothesis they have made a very respectable argument. But their whole argument is founded upon a mistaken view of the facts and the law of the case. The vote given by White River township, in favor of the railroad appropriation, was not and could not be, under the railroad aid act or the state constitution, a subscription by said township to the capital stock of said railway company, either conditional or otherwise. The power to make the subscription, or ' to take stock in such railroad company,' as it is expressed in the 14th section of the railroad act, is not conferred by said act until after the assessment, or some part thereof, has been collected. The appellants do not say that there had been collected any part of the tax assessed in aid of said railroad company; in fact, as they say they 'sue not only for themselves, but also for and on behalf of all the taxpayers of White River township,' it may be fairly inferred that no part of the said railroad tax had been collected, at the time of the commencement of this suit. Therefore, there had been no subscription made, either conditional or absolute, in the name of said township, to the capital stock of said railway company; and, therefore, the argument and authorities of the able attorneys of the appellants are not applicable to the case now under consideration.

"The appellants say in their brief that 'technically the railroad company may say that their railroad is located through White River township.' The appellees do not say this *technically;* but they do say, as a matter of absolute and unquestioned fact, the truth of which is conceded in appellants' complaint, that the said railroad had been located and built through said township, at the time of the

commencement of this action. The appellants do not claim in their complaint that the appellee, the said railway company, had aught to do with the alleged change of the dividing line between the townships of Patoka and White River. It is not clear, however, from the averments of the complaint, that the appellants were not the moving spirits in obtaining the alleged change of this dividing line. Upon this point, the complaint avers, 'that afterward' (that is, after White River township had voted for the railroad appropriation), 'at the September term, 1869, of the board of commissioners of said county, on the petition of sundry citizens of White River and Patoka township, in said county, the township line dividing said townships was changed, by annexing a strip of territory, one-half mile in width, to White River township, and taking the same off Patoka township.' Who these sundry citizens were does not appear; and it is perhaps immaterial, as it seems that the board of commissioners had the right and power to make such alterations in the boundaries of the townships as they deemed proper, of their own motion and without any petition. 1 G. & H. 637. But it is clear that the change was made in the said township line without the action or procurement of the appellee, the said railway company. The learned counsel of the appellants, in their brief in this cause, use this language: 'Now if the town were itself, by its own action, to extend its boundaries, and after such voluntary action the road were located within the prescribed distance, the town would probably be liable to pay the additional' (should be *conditional*) 'subscription.' And then the argument of the appellants proceeds: 'But in this case, the power of changing the township boundaries belongs to the county board.' In this respect, the law makes the county board the agent of the citizens, to act as the 'convenience of the citizens may require.' 1 G. & H. 637. The act of the county board, in changing the dividing line between White River and Patoka townships, was therefore the act of the two townships. For aught that appears to

the contrary, in appellants' complaint, every citizen of both townships, including the appellants in this case, joined in the petition upon which the said township line was changed as stated in said complaint. Of this change it is certain that White River township, in its corporate character, ought not to and cannot complain, as it added largely to its wealth and taxables. And if White River township, in its corporate capacity, cannot complain of this action of the county board, enlarging its boundaries, then surely the corporators, the citizens residing within the territorial limits of said township ought not to be permitted, either individually or collectively, to complain of such action or any of its legitimate results. Appellants counsel say, in their brief: ' It might occur that a township boundary should be largely expanded; in which case the original township would derive no benefit from the railroad.' That is clearly a *non sequitur.* It is true, that a township might be so large that a citizen of the township, who lived and had his property remotely from the line of the proposed railroad, would derive little or no direct personal benefit from the construction and use of such road. But the township, as a body politic and corporate, must and will always derive benefit from the construction and use of a railroad within its territorial limits, no matter how large its territory may be, by the mileage valuation of such railroad and its appurtenances, and by the uniformly increased valuation of the real estate adjacent to such railroad, for the purposes of taxation.

" The theory of our railroad aid act is this, that counties and townships, not territorially, but as bodies politic and corporate, are always benefited by the construction and use of railroads into and through their territorial limits, by the value of the peculiar property of railroads, and by the invariably increased valuation of other property, for the purposes of taxation; and inasmuch as these results have always followed the construction and use of railroads, inasmuch as these enterprises have invariably benefited the general public of the counties and townships into and through which

railroads run, the law has wisely provided that counties and townships in their corporate capacities may raise money by taxation and use the same in aid of the construction of railroads, by taking stock in and making donations to railroad companies.

"The strip of territory annexed to White River township, by the action of the county board, is said to be half a mile wide; its length is not given. It does not appear from appellants' complaint that this strip of ground was ever inhabited by any one, and certainly not by any of the appellants. It would seem that if any one could complain of the said railroad tax, it would be the possible resident of this half mile strip of annexed territory; for such an one had no vote either for or against the railroad appropriation. But when this half mile strip was lawfully annexed to White River township, it became and was a component part of the territory of said township, to the same extent that it would have been if it had been embraced within the boundaries of said township from its earliest organization. And the citizens resident upon the said annexed strip were members of the body politic and corporate known by the name of White River township, were possessed of all the rights and privileges, and were subject to all the duties and burthens (the railroad tax included) of the 'oldest inhabitant' of said corporation.

"Suppose, as the fact is, that Patoka township had also voted, before the change of the township line dividing it from White River township, for an appropriation in aid of said railway company. Afterward and before the levy of the tax, the county board made the change in said dividing line by taking off from said Patoka township a half mile strip of its territory, and annexing the same to said White River township, and the appellee, the said railway company, had located and built its railroad through said half mile strip. Now, under these circumstances, it is perfectly clear that the tax voted for in the township of Patoka could not be lawfully assessed, after the said change of the town-

ship line, although the said railroad was located and built through the said strip of ground, which at the time of the vote was within the boundaries of said Patoka township. The reason for this is, that at the time fixed by law for the assessment of the tax voted for, the strip of ground through which the said railroad was located and built was not within the boundaries of said Patoka township. The appellees respectfully submit that the converse of this proposition is equally true and clear; that where a township has legally voted for a railroad appropriation, in aid of the construction of a certain railroad, the tax provided for by law, as the result of such vote, may be lawfully assessed and collected, whenever it appears, at the time fixed by law for such assessment, that such railroad has been located into or through the then existing territory of such township, without any regard to the question whether such territory has been enlarged or diminished since the said vote.

" In conclusion, the appellees respectfully submit, that the appellants have utterly failed to show in their complaint, either that the tax assessed was or is void, or that the collection of such tax ought to be enjoined. On the contrary, it clearly appears from the averments of said complaint, that all the requirements of the railroad aid act, preliminary to the assessment of said tax, had been strictly and literally complied with; that the said tax was duly assessed at the proper time, by the proper authority, and in obedience to the positive mandate of law; and that in collecting the said tax, so assessed as aforesaid, the appellee Whitney was simply discharging the plain duty imposed on him by law. If there is any doubt in this case, which the appellees emphatically deny, it is a doubt which has not yet arisen, and cannot arise until after the assessment, or some part thereof, has been collected. Then it will be the proper time, under the law, for the proper authority to determine whether or not the said railroad has been constructed in or through said White River township, and upon such determination to

make such disposition of the moneys collected under the said assessment as the statute prescribes.

"The able counsel of the appellants truthfully say, in their brief herein, that this case is barren of authority. In this view of the case, the appellees and the appellants fully concur. After a diligent and thorough examination of text-books and reports, the appellees confess their utter inability to find anywhere an adjudicated case in point, or even an analogous authority. So far as they can learn, this case is *sui generis* and without any precedent.

"The appellants insist, throughout their brief, that the action of White River township, in relation to the railroad appropriation, down to and including the vote of said township in favor of said appropriation, was equivalent to a subscription, then made by said township to the capital stock of said air line railway company, upon the condition that the said railway company should construct its railroad in or through the then existing territory of said township. On the other hand, the appellees deny that the said action of the said township, upon the said railroad appropriation, was equivalent or even analogous to such a subscription to the capital stock of said railway company, or was subject to any such condition. In fact, the appellees say that, under the terms of the railroad aid act, sec. 14, 3 Ind. Stat. 394, no subscription was then made, and no stock was then taken, or could have been taken, by or in the name of said township. The vote of said township was taken on the 12th day of July, 1869; and the special tax, resulting from said vote, was not even levied until June, 1870. And so the appellees say, that no action had been had, equivalent or analogous to the subscription or taking of stock, by or in the name of the said township, until after June, 1870; and the alleged change in the boundaries of said township had been made in the preceding September.

"Upon the whole case, the appellees respectfully submit that the decision of the court below, in sustaining their demurrer to appellants' complaint, was correct, and that the

judgment there rendered should be affirmed by this honorable court."

Counsel for appellants in their supplemental brief assume the following positions:

"We insist that upon this state of facts the tax has become illegal, if it was not illegal when the levy was made. The only question upon which appellees' counsel and ourselves differ is as to the significance of the vote in favor of the appropriation, and the materiality of the place where the road is located and actually built.

"We maintain that the vote of the people of White River township was only an authority to their agents, the board of commissioners of Gibson county, to assess and collect a tax to be applied when collected in aid of the construction of a railroad in or through their township, as it then existed, and not in or through their township as it might exist at some future day. The appellees, on the contrary, insist that the letter and spirit of the statute is complied with, if the road is located and built in or through the township as its boundaries may exist at the time of the assessment. We contend that the location and construction of the road related back to the vote, and must conform to it. They insist that the assessment, and not the vote authorizing it, is the principal thing, and that if the road as constructed passes in or through the township as its boundaries existed when the assessment was made, the appropriation is earned and the payment of the tax should be enforced.

"Our associate counsel very properly show in their original brief for the appellants, that the question is analogous to that of a subscription to a railroad company, conditioned that the road shall be located or built within certain limits or boundaries.

"In such case it is admitted that the subscription cannot be enforced without a performance of or compliance with the condition.

"The appellees' counsel, in their brief, say, the vote given by 'White River township in favor of the railroad appro-

priation was not, and could not be, under the railroad aid act or the state constitution, a subscription by said township to the capital stock of said railway company, either conditional or otherwise. The power to make the subscription or to take stock in such railroad company, as it is expressed in the 14th section of the railroad act, is not conferred by said act until after the assessment or some part thereof has been collected.' We submit that this argument does not tend to weaken the force of the analogy between this case and a conditional subscription. True, a popular vote authorizing, first, an assessment, second, a collection, and, third, a subscription, is not itself a subscription. Nor if A. gave B. power of attorney to subscribe stock for him on a given condition, would the power be a subscription, and yet, if B. in execution of the power subscribed the stock with the required condition annexed, the railroad company receiving the subscription could not evade the performance of the condition by saying a power of attorney is not a subscription. In the case just supposed, it would be equally out of the question for B. to waive the condition or modify it in the smallest particular, without the consent of his principal. Here the vote of White River township was the power of attorney which authorized the board of commissioners as its agent, first, to levy, second, to collect the tax, and, third, to apply the proceeds by donation or subscription to the construction of the road in aid of which the vote was taken. But the law authorizing the vote itself annexed the continuing condition that the road for which the tax might be assessed and collected and to the construction of which it might be applied must be a railroad in or through White River township. Here the agent of the tax-payers of White River township, namely the board of commissioners of Gibson county, by a little sharp practice, after the receipt of their warrant of attorney, attempted to modify the condition upon which they were authorized to act, by substituting Patoka township for White River township, as the route of the road. This is clearly in substance and effect what

that board did by changing the boundaries of White River township after the vote was taken, and then attempting to make that act of their own, instead of the vote, the basis of the assessment. If the boundaries of White River township still remained as they were when the vote was taken, no one would pretend that any tax could be assessed or collected; for the simple reason that the road is already constructed through Patoka township without passing into or through White River township. If, after the vote, the board of commissioners can, by their own act without consulting the tax-payers of White River township, assent to a change of the route of the road, there is no sense or propriety in submitting the question to a vote at all.

" The appellees make a point of the fact that the taxes have not been paid, and the inference seems to be, from what they say, that the tax must be collected, and then, if the proceeds cannot be legally applied to the construction of this road, the application of the taxes may be enjoined. We say that the New Albany and St. Louis Air Line Railway Co. has exhausted its power so far as the territory of White River township is concerned, by building its road without the limits of said township; that the assessment, if made after the construction of the road, was itself illegal; but if the road was located and constructed on its present route after the assessment was made, then it became certain by such location and construction of the road that the tax could never be legally applied to the building of the road, it became illegal to collect the tax, and its collection should be enjoined. The court will not permit the tax to be forced from the pockets of the people of White River township to be returned again to them because of the failure of the object for which it was collected. By an act supplemental to the railroad aid act, approved January 30th, 1873, it is provided,

" 1. That no tax voted for by any township or county under the original act of May 12th, 1869, shall be placed upon the duplicate of any county until the railroad, in aid of which it

was voted, shall have been permanently located in the county or township making the donation or taking the stock.

" 2. That the collection of the tax shall, in certain cases provided for in the act, be suspended until the road is permanently located in the county or township, and has expended an amount of money equal to the amount of money to be donated to, or stock taken in, such railroad company by such county or township.

" Here the railroad never can be constructed in or through the township by which the vote was cast, and therefore the collection of the tax ought to be enjoined.

"The appellees contend that the theory of our railroad aid act is ' at counties and townships, not territorially, but as bodies politic and corporate, are always benefited by the construction and use of railroads into and through their territorial limits, by the value of the peculiar property of railroads and by the invariably increased valuation of other property, for the purposes of taxation; and inasmuch as these results have always followed the construction and use of railroads, inasmuch as these enterprizes have invariably benefited the general public of the counties and townships into and through which railroads run, the law has wisely provided that counties and townships, in their corporate capacities, may raise money by taxation and use the same in aid of the construction of railroads by taking stock in, and making donations to, railroad companies.' From what source the appellees derive their knowledge of the theory of the railroad aid act we are not advised, but as the act itself requires the railroad that receives aid from the county or township to pass in or through the territory of such county or township, it would seem that more consideration was given to the territorial advantages to be derived than any other.

"Farms have a territorial, and not an ideal or corporate existence, and it is not unreasonable to suppose that one of the advantages to be derived by the construction of a railroad in or through a county or township would be the

increased facilities afforded for carrying to market the pro-
ducts of the farms, mines, and forests within such county or
township.

"If corporate benefit is the chief thing, why allow town-
ships to vote at all distinct from the county? Why not let
the people of the county as a whole decide for all townships.
The fact that each township may, under the law, vote aid to
any road that shall pass in or through its borders shows that
territorial advantage received paramount consideration.
Again, if corporate advantage is the chief consideration,
why is it that townships in their corporate capacities are not
allowed to do anything in the matter of authorizing, asses-
sing, collecting, or applying the tax? The people in their
capacity as citizens or voters authorize the tax, the county
treasurer collects, and when collected the board of commis-
sioners decide whether they will subscribe stock for the
township or donate the proceeds of the tax to the railroad
company, in aid of the construction of whose road it was
collected. From the beginning to the end of the matter,
the corporate authorities of the township are ignored, and
yet the appellees insist that corporate advantage, if not cor-
porate exaltation, lies at the basis of the theory of the law.

"We cannot join in the appellees, eulogium on the wisdom
of this law, which authorizes a majority of the members or
citizens of a municipal corporation to vote upon the minority,
against the will of the latter, a municipal tax, not for muni-
cipal purposes, but for extra-municipal or non-municipal
purposes.

"It is the fashion now to eulogize such perversions of the
taxing power, but that fashion is passing away, and unless
we misinterpret the signs of the times, the day is not far
distant when municipal taxation will be confined to munic-
ipal purposes in all the States by appropriate constitutional
limitations."

We have duly considered the positions assumed and care-
fully weighed the arguments offered by opposing coun-

sel ; and we have arrived at the conclusion that the assessment can not be sustained.

The first, second, and twelfth sections of an act to authorize aid to the construction of railroads by counties and townships · taking stock in, and making donations to railroad companies, approved May 12th, 1869, read as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That whenever a petition shall be presented to the board of commissioners of any county in this State, at any regular or special session thereof, signed by one hundred or more freeholders of said county, asking said board to make an appropriation of money to aid a railroad company, named in such petition, then duly organized under the laws of this State in the construction of a railroad in or through such county, or whenever such a petition shall be presented to such board of commissioners as aforesaid, signed by twenty-five freeholders of any township of such county, asking such township to make an appropriation of money to aid a railroad company named in such petition, and then duly organized as aforesaid, in constructing a railroad in or through such township, by taking stock in or donating money to such company to an amount specified in such petition, not exceeding, however, two per centum upon the amount of the taxable property of such county or township, as the case may be, on the tax duplicate of the county, delivered to the treasurer of the county for the preceding year, it shall be the duty of such board of commissioners, after being satisfied that such petition has been properly signed by the requisite number of freeholders of such county or township, as aforesaid, to cause the same to be entered at full length upon their records.

" Sec. 2. The board of commissioners shall take said petition under advisement and thereupon order the polls at the several voting places of the county, or of the particular township, as the case may be, to be opened on a day to be named in the order, which shall not be less than thirty, nor

more than sixty days thereafter, and the votes of the legal voters of said county, or of the particular township named in said petition, to be taken upon the subject of appropriating money by such county or by such township, for the purpose of aiding in the construction of such railroad as prayed for in said petition.

"Sec. 12. If a majority of the votes cast shall be in favor of such railroad appropriation, the board of county commissioners, at their ensuing regular June session, shall grant the prayer of said petition, and shall levy a special tax of at least one-half the amount specified in said petition, but not exceeding one per centum upon the real and personal property in the county or township, as the case may be, liable to taxation for state and county purposes, which tax shall be collected in all respects as other taxes are collected for state and county purposes; and if the sum so levied shall not be equal to the amount specified in said petition, then the residue thereof shall be levied by said board of county commissioners at the June session of the following year."

It is fully shown by the above quoted sections that the validity of an assessment in favor of a railroad is made to depend upon the will of the people to be affected thereby. No tax can be levied by the board of commissioners, unless a majority of the votes cast shall be in favor of the railroad appropriation. As the assessment depends upon the votes of the tax-payers, it should strictly correspond with their will. The theory upon which the law is based and supported is, that a majority of the voters of a county or township, by their votes cast in pursuance of the law, impose a tax upon themselves. It is therefore essential to the validity of any tax levied under the act in question, that a majority of the votes should have been cast for the proposition in aid of which the assessment is made. The question for our decision is, whether a majority of the voters of White River township agreed to impose a tax upon the property of the township to aid in the construction of the road, as it has been located and constructed. It is not disputed that a majority

of the voters of such township cast their votes in favor of aid in constructing a road through the township as it then existed, but it is manifest that no votes have been cast in favor of the road as it is located and constructed. Are we to presume that because the voters of such township were in favor of the construction of a railroad in and through the township as it was bounded at the time of the vote, they were and are in favor of its construction over and through territory that did not then belong to the township? We ought not, and can not indulge such a presumption. The location and construction of the road through the township as it existed at the time of the vote may have beneficially affected a majority of the voters. Such a location may have suited the convenience, and increased the value of the property, of a majority of the voters, while its location and construction over and through the added territory may not have increased their facilities for travel or transportation of their products, or added to the value of the property which had to bear the increased burden of taxation. The citizens living upon the added territory never had the opportunity of voting upon the question. The citizens of the old township never voted in favor of taxing themselves to aid in building the road as constructed.

In *The Lafayette, Muncie, and Bloomington R. R. Co.* v. *Geiger,* 34 Ind. 185, in speaking of the vote provided for by such act, the following language is used: "Prior to the adoption of our constitution, the practice had been to submit the question to the vote of the people. The constitution is silent as to the mode of ascertaining the wishes of the people. The legislature has provided for a vote. This is an honest and fair mode of acting. The people should never be cheated or defrauded into taking stock in a railroad. If the question is fairly submitted to them, and they, with full knowledge that it is intended to subscribe for stock, impose the tax on themselves, they will have no cause of complaint against any person but themselves."

*Garrigus* v. *The Board of Commissioners of Parke County,*

39 Ind. 66, held void a tax which had been levied in pursuance of a vote of the people of the county, upon the ground that the election had not been fair, because the voters were required to vote in favor of or against aid to two railroad companies. The court say, "that the plain and obvious purpose of the legislature, to be derived from the plain and unambiguous language of the act, was, that the voters of a county or township should have the privilege of voting for or against any proposition that might be submitted to them, without being compelled to vote for or against some other proposition that they would not have freely and of their own choice voted for."

The Supreme Court of Illinois, in the case of *Supervisors of Fulton County* v. *The M. & W. R. R. Co.*, 21 Ill. 338, in speaking of the fairness of a vote that had been taken upon a proposition to aid in the construction of a railroad, say:

"The truth is, the voters of Fulton have never had an opportunity to vote, and never have voted this subscription, for the question was at no time distinctly before them. The question before them was, will you vote for a subscription to two roads? Neither road has received the approving vote of the people, and until that is done, until the naked single question shall be fairly presented to those voters, they ought not to be bound, or injuriously affected, by any such jockeying management and log-rolling."

The same court, in the subsequent case of *The People* v. *The County of Tazewell*, 22 Ill. 147, say: "The vote resulting in favor of such subscription or purchase is necessary to authorize the county judges or city council to act, and is a limitation on the discretionary power conferred by the first section; as without such vote, they could not subscribe, whatever might be the desire of the citizens of the county or city."

The Supreme Court of Iowa, in *McMillan* v. *Lee County*, 3 Iowa, 311, in speaking of a vote under a similar law, say:

"Every proposition for the borrowing or expenditure of

money by a county, and for the levy of a tax to pay the same, receives its vitality as a law from the majority of the votes of the people cast in its favor. Such being the case, we think it is evidently the policy of the law, no less than its spirit and intention, that the vote of the people should be permitted to be cast for or against the propositions submitted, with no restraint upon the free expression of their choice."

The Supreme Court of Kansas, in *Leavenworth County* v. *Miller*, 7 Kansas, 536, say:

"In cases of local improvements, or improvements that confer local benefits, the best system for securing the rights of the locality to be taxed that has yet been tried, is to let the locality itself say how much the benefit is worth, and therefore how much it is willing to be taxed for it."

We have made these quotations for the purpose of showing the importance and sanctity attached to the vote of the people, and that no assessment will be sustained that is not authorized by the free and unrestrained voice of the people to be taxed.

The law in question is one which imposes a burthen upon the people, in some measure for the benefit of private corporations, though accomplishing a public purpose. It should not be construed beneficially for the corporation and against the tax-payer beyond its spirit and the true intent and meaning of the legislature. We think the true spirit and intent of the act require that the road should be built within the territory of the township as it existed at the time the vote was taken, because it must have been the understanding of the people that it should be there built when the vote was taken. Otherwise, their purpose in voting the tax may be defeated, and a tax imposed upon them for a purpose which they never contemplated. In this view of the law, we think the tax in question cannot be collected.

It is very obvious to us that the voters of White River township have not, by their votes, authorized the imposition of a tax to aid in the construction of the railroad where

it has been located and constructed, and that the court erred in sustaining the demurrer to the complaint.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.