R. C. & W. B. Gregory, for appellant.

Jones & Royse, for resident legatee of appellee.

---

## WILLIAM W. BROCAW ET AL. V. THE BOARD OF COMMISSIONERS OF GIBSON COUNTY.

1. *Railroads—Constitutionality of Laws Authorizing Aid of*—The constitutionality of such laws has been too long settled in this State to be questioned now.

2. *Same—Township Tax in Aid of—Judgment of Board of Commissioners upon Petition for, Cannot be Collaterally Attacked*—The question whether a railroad may extend its line beyond a point named in its organization is a jurisdictional question and adjudicated by the board with all other incidental matters when they pronounced in favor of the petition for taxation to aid the making of such extended portion ; such adjudication cannot be attacked collaterally.

3. *Same—Limit of Taxation in Aid of*—In the Act of May 12, 1869, on this subject, sections 1 and 13 are to be construed together.  Their substance is that there can be one levy not exceeding two *per centum* upon the taxables, within two years—after which other additional appropriations may be made upon new petitions.

4. *Same—Conditional Township Donations*—Townships granting such aid may indicate any reasonable conditions, such as the running of trains, and the like, to be complied with before such donations shall be paid, unless there is some statute to the contrary. The amended act last referred to expressly provides for such conditions.

5. *Same—For What Work Donations May be Made*—Such donations are not limited to railroad building within the township. It is only necessary that the railroad in question touch some part of the township.

6. *Same—What is Compliance With Condition of Donation*—In order to comply with a condition requiring the construction of the railroad and running of trains over it, it is not necessary that such road shall be perfected in every respect, but only so far completed on its established line that the cars might be and were run with reasonable regularity.

7. *Constitutional Law—Amendments to Statutes*—A section of a statute once amended cannot be again amended, the second amendment being unconstitutional and void.

8. *Same—Section* 1, *Act of March* 8, 1879 (*Acts of* 1879, *p.* 46), *Valid*—Said section is valid because said act does, by its title, profess to amend the amendatory act of 1875, and said section 1, of the act of 1879, does then amend said act of 1875, by substituting for the latter what are really amended sections of the original sections of the act of 1869.

Filed June 15, 1881.

Appeal from Gibson Circuit Court.

Opinion of the court by Mr. Justice Elliott.

This was a complaint by the appellees, who were citizens and tax-payers of Patoka township, Gibson county, to enjoin the collection of a tax which had been levied for the benefit of the Louisville, New Albany and St. Louis Railroad Company. A demurrer was sustained to the first paragraph of the complaint. The demurrers of the appellees, the board of commissioners, and of Montgomery, the auditor, were sustained to the second paragraph; the demurrer of the other appellees was overruled. Answer was filed by the appellees whose demurrers were overruled, and to it the demurrer of appellant was overruled.

The important and controlling questions are those presented by the assignment of error based on the ruling sustaining the demurrer to the first paragraph of complaint, and those questions will first receive consideration.

The complaint is very lengthy, and it would greatly prolong this opinion to give even an outline of its allegations. No questions of pleading are involved; the case turns upon the correctness

of general principles, which controlled and led to the opinion of the court below, and these questions can be more fully presented, and be better understood by referring to the facts out of which the questions spring, as each question is discussed, than by giving an introductory summary of the matter pleaded.

Four general propositions are stated and discussed by the appellants. The first is substantially as follows: The act under which the Louisville, New Albany and St. Louis Railroad Company was organized, that of March 3, 1865, did not authorize it to construct a railway east of Princeton, and hence the corporation had no authority to receive a donation for the purpose of constructing a road east of that town. It is argued at much length that there could be no valid tax assessed for the purpose of aiding the railroad company to construct a road east of Princeton, for the reason that the organization of the corporation was such that its authority to build a road did not extend beyond the said town. The whole argument is based upon the proposition that the organization of the corporation was such as restricted the line of its route to the point named. The question of the organization of the corporation and all matters incidentally connected with it, were necessarily determined by the commissioners as jurisdictional matters, when they pronounced judgment upon the petition for the assessment of the tax, and can not now be collaterally inquired into. The case of *The Commissioners* v. *Hall*, 70 Ind., 469, furnishes a conclusive answer to the argument of the appellants. The doctrine which applies to the point under immediate mention, is there clearly and forcibly expressed. In addition to the authorities there collected, may be added *Ryan* v. *Vorgas*, 37 Iowa, 71; L. & N. R. R., 19 Am. R. C., 107; *Porter* v. *State* (this term), *Porter* v. *Trustees*, 71 Ind.; *Faris* v. *Reynolds*, 70 Ind., 359.

The second proposition is thus stated: "There having been collected by taxation from the tax-payers of said township, the sum of seventy-thousand dollars, and appropriated to aid in the construction of said railroad through Patoka township, and that sum being equal to two per centum upon the amount of the taxable property of said township, on the tax duplicate of the preceding year, there can not now be legally collected an additional tax for the purpose

of aiding in the construction of the same road through said township."

In order to clearly apprehend the force and bearing of this proposition, it is necessary to briefly state the substance of the allegations of the complaint upon this point.

Prior to June, 1869, a corporation known as the Louisville, New Albany and St. Louis Air Line Railroad Company had been organized.   At the June session of the board of commissioners of Gibson county, an order was made, upon the proper petition, for an election to determine whether a donation of $50,000 should be made to said corporation, and a tax levied for that purpose.   The tax was voted, levied and collected.   Afterwards an additional donation of $25,000 was voted, tax levied and collected.   The aggregate of $75,000 was equal to two per centum of value of taxable property of the said township.   After this had been done, and after the corporation had constructed part of its road, a decree of foreclosure was entered upon a mortgage which said corporation had executed, sale made thereon and conveyance executed.   The purchasers at such sale filed articles of association under the act of March 3, 1865 (1 R. S. 728), and organized as a corporation, under the name of the Louisville, New Albany and St. Louis Railway Company.   In August, 1878, this company consolidated with the St. Louis and Mount Carmel Railroad Company, a corporation organized under the laws of Illinois.   The consolidated corporation retained the name of that organized under our statute.   In April of the following year a petition was presented to the commissioners, asking that a donation of $60,000 be made to said railway company, and such proceedings were had as resulted in an election, a majority vote in favor of such donation, and the levy of a tax of one per centum.   Collection of this tax is here resisted, as the proposition indicates, upon the ground that the prior levy of two per centum exhausted the power of the commissioners.

It is necessary that the statute controlling this matter should be set out, for it is very difficult to obtain a clear apprehension of the question without a full understanding of the statute.   The act governing the case is that of May 12, 1869, and the sections of the act which control the point under immediate discussion are sections one and thirteen, which are as follows:

Section 1. "That whenever a petition shall be presented to the board of commissioners of any county in this State, at any regular or special session thereof, signed by twenty-five freeholders of any township of such county, asking such township to make an appropriation of money to aid a railroad company, named in such petition, and then duly organized under the laws of this State, in constructing a railroad in or through such township, by taking stock in or donating money to such company, to an amount specified in such petition, not exceeding, however, two per centum upon the amount of the taxable property of such township on the tax duplicate of the county delivered to the treasurer of the county for the preceding year, it shall be the duty of such board of commissioners, after being satisfied that such petition has been properly signed by the requisite number of freeholders of such township, as aforesaid, to cause the same to be entered at full length upon their records."

Section 13. "No township shall be authorized by the provisions of this act, to appropriate to railroad purposes, or to raise by taxation for such purpose, to exceed two per centum upon the taxables of such township, as said taxables shall appear on the tax duplicate of the county, in any one period of two years."

We agree with counsel for appellants that the right to make appropriations is limited as to the amount which may be assessed at one time or upon one petition. We regard this doctrine as settled, and rightly settled, by the case of *The Columbus, etc., Co.* v. *The Board et al.*, 65 Ind. 427. But settling the question as to the amount which may be levied upon one petition does not dispose of the case. It by no means follows that because the amount of any one appropriation is limited to *two per centum* that other appropriations may not be made at other times and upon different petitions. Sections one and thirteen must be construed together, and when thus taken we find in one the limit as to the amount, namely, *two per centum*, in the other the limit as to the time within which such amount may be levied, namely, within any one period of two years. "We must give the statute this construction, or we must hold that the last clause of section thirteen is utterly meaningless. This we cannot do without violating the familiar rule that every sentence, clause

and word of a statute shall be given effect, and be deemed to have some meaning."

There is nothing in the act indicating that the power to make an appropriation is exhausted when once exercised. Section one of the act fixes, as we have seen, the amount which shall be assessed upon one petition, and section thirteen provides that such assessments shall not be made oftener than once in two years; but there is nothing restricting the exercise, except as to the amount named and to the period limited. In *Empire* v. *Darlington*, 101 U. S., 87, it was insisted that where such a power as that exercised by the commissioners in this case was once exercised it was exhausted, but the court declared this doctrine "to be clearly untenable," and held that there might be continued exercises of the power, provided the limit expressly designated by the statute was not transcended.

It is agreed, with much plausibility by the appellees, that the corporation to which the last appropriation was voted is not the same as that to which the first appropriation was made. There are cases which go very far towards supporting the appellees. In ordinary cases, there can be little question as to the correctness of the proposition, but under the peculiar provisions of the act of 1865, and under the facts of this case, there is some room for debate. It is not, however, necessary for us to decide that question, and we give no opinion upon it.

The third proposition stated by the appellants, is: "The condition contained in the petition upon which the tax in question was voted, renders the petition and all proceedings thereon void."

One branch of the argument of appellants, is that the condition expressed is unwarranted by any statute of the State. The condition is thus stated in the petition: "If said company shall fully construct so much of their said railroad as lies between the town of Princeton, in said Patoka township, and the eastern boundary line of said Gibson county, and a train of cars shall have passed over the same, on or before the first day of January, 1883, then one-half of said appropriation, being thirty thousand dollars, shall be paid to said company, as soon as the same is collected, and afterwards when said company shall fully construct their said railroad to the town of Huntingburg in Dubois county, in the State of Indiana, and a train of cars shall have passed over the line of said

railroad, from the town of Princeton in said Patoka township, to said town of Huntingburg, then, and not otherwise, the residue of said sum, being $30,000 shall, when collected according to law, be paid to said company."

The case of *Bittinger* v. *Bell*, 65 Ind. 445, holds that the township may prescribe reasonable conditions, and make their subscriptions payable thereon. It was there said, " It seems to us, it may well be held as we now hold, that the township may, in making its subscription, and in the preliminary proceedings which enable it to make the subscription, prescribe such reasonable conditions as are not in violation, either of the letter or the spirit of the law." This doctrine is well sustained by authority. *People* v. *Dutcher*, 56 Ill. 144; *People* v. *Tazewell*, 22 Ill. 147 ; *Port Clinton etc.* v. *Clere, etc.* 13 Ohio St. 559 ; *State ex rel* v. *County* 51 Mo. 522; *Faris* v. *Reynolds*, 70 Ind. 359.

The right to prescribe conditions being held to exist, the question remaining for investigation, is whether the conditions prescribed in the petition in the present case were opposed to any law. If we are to regard the act of 1879 as in force, then the question as to the right to impose conditions is entirely free from difficulty, for that act broadly provides that the donation or appropriation may be made, upon such terms and conditions as may be specified in the petition. Acts 79 p. 46.

It is, however, very earnestly insisted that section one of the act of 1879, is invalid. The argument upon this point, is that the section is void, for the reason that it purports to amend section one of the act of May 12, 1869, when that section had been already amended by the act of March 17, 1875. It is settled that a section of a statute which has been once amended, can not be again amended. *Blakemore* v. *Dolan, et al*, 50 Ind. 194. An act professing to amend a section of a statute which has already been superseded by amendment is, as declared in the case cited, " unconstitutional and void." The act of 1879 does, by its title, profess to amend sections 1, 2, 3, 4, 8, 13 and 17, of the act of 1875, and does amend them by substituting amended sections for the original ones.

The contention of appellees, is not that the act of 1875 does not amend section one of the act of 1869, but that the act of 1879

amends the amendatory act of 1875, and does not profess to amend that of 1869.    The title of the act of 1879, is as follows: "An act to amend the first and fourteenth sections of an act entitled 'An act to authorize aid to railroads by counties and townships taking stock in and making donations to railroad companies,' approved May 12, 1869, and amended by an act entitled an 'Act to authorize aid to the construction of railroads, by counties and townships taking stock and making donations to railroad companies,' approved March 17, 1875, and declaring an emergency." Section fourteen of the act of 1869 had never been amended, and this is probably why the title of the act of 1879 makes reference to that act, for it was certainly necessary to refer to that act in the title of the amending act, and we do not think any one could have been misled by the title of the latter act.    Although the title of the act last-mentioned is somewhat confused, yet we think it fairly indicates the particular acts and sections intended to be amended.    Even if the matter were in doubt, it would be our duty to uphold the law, and declare that the Legislature had not violated the provisions of the constitution.    We decide, therefore, that section one, of the act of 1879, is constitutional and valid.

Another branch of appellant's argument is that neither the petitioner nor the commissioners have any authority to prescribe terms or conditions in violation of the statute.    To this general proposition we unhesitatingly yield assent.    While conditions may be imposed, they must be such as the statute does not forbid, either by express words or necessary implication.    The general grant of power contained in section one cannot be construed to confer authority to make terms or conditions which the statute does not authorize.    It is contended that the petition and order violated the provisions of the statute because they allow money to be used in constructing a part of the railroad lying outside of the limits of the township.    To state the point in other words, the position of counsel is: that townships have no right to appropriate money to be used in building a road beyond the township limits, but that all such money must be used in construction of that part of the road situate within the limits of the township.    This position is not tenable.    It is true that the road to which the appropriation is made must touch some part of the township (*Alvis* v. *Whitney*, 43

Ind. 83), but we do not think that all the money must be expended in the township making the appropriation. In *Petty* v. *Myers*, 49 Ind. 1, it was said: "As at present advised, we are not of the opinion that when aid is given by a county or township for the construction of a railroad running through the same, the money must be necessarily expended upon that part of road lying in the county or township."

It is true, that in the case cited there was no decision upon this point, and that case is not to be regarded as doing more than indicating the views of the court. We think the intimation of that case a correct expression of the law. There is nothing in the letter of the statute requiring the money to be expended within the township, and nothing in the spirit of the law evincing such a requirement. The object of the statute was to secure to the citizens of counties and townships the advantages of railways, not to secure the distribution of money within county and township limits. The intention of the Legislature was to enable the citizens of townships to aid in the building of lines of railways which would afford them means of transportation, not simply within the township limits, but beyond to the market places and cities of the county. But we need not elaborate this point, for there is nothing in the statute requiring that the money appropriated shall be expended within the limits of the township, and we have no right to interpolate such a provision, even if we had the inclination.

Townships have no right to vote aid to railways already constructed. The statute certainly confers no such authority, and none exists independently of the statute. While this is true, we think it furnishes the appellants no assistance, for we do not understand that any appropriation was made to a company which had completed its road. On the contrary, we think it affirmatively appears that the road of the company to which Patoka township voted aid, was not completed, but was in progress of construction.

The fourth proposition of appellants is; "That the statutes providing for these appropriations by taxation, are unconstitional." The question of the unconstitutionality of these statutes, is not an open one. It has been settled against the appellants by repeated decisions of this court. If there were no other reasons requiring us to uphold these statutes, we should feel compelled to sustain them upon the principle of *stare decisis*.

We come now to the questions arising upon the answer. The single objection urged against the answer, is that it does not show that the railroad company had fully performed the conditions imposed by the petition and order. Upon this point the complaint was as follows:

"And plaintiffs further charge that said railroad company did not, on or before the first day of January, 1880, fully construct so much of its said railroad as lies between the town of Princeton, in said Patoka township, and said eastern boundary line of said county, but on the contrary said railroad on said day, and for a long time thereafter, was, and remained, wholly unfinished and incomplete in many particulars; among which the following: The cross-ties upon said road were two few in number and placed thereon too wide apart, and only so placed as to support the iron of said road temporarily; that the iron rails upon said road had never been fully spiked to the cross-ties, but only one half of the necessary spikes for the full construction of said road were used thereon on or prior to said first day of January, 1880; that no part of said railroad, on the close of said day, had ever been ballasted; that the grades and cuts and embankments of said road had never been completed; that the embankments and excavations were so incomplete, that it left many, and unnecessarily, heavy grades upon said road; that the bridges and culverts and trestle works upon said road remained unlevel, the same having never been leveled."

The answer of the appellees to the allegations contained in the above extract from the complaint was as follows:

"Said railroad company relying upon said proceeding, and desiring to comply with the terms of said petition, and to become entitled to said aid, entered upon the construction of its railroad in and through said county, and so fully constructed its said railroad in said county; that on the first day of December, 1879, the same was ready for running locomotives and trains of cars thereon * * *; that from said first day of December, 1879, continuously to the present time, the entire line of the railroad of said company lying within said county of Gibson, from the western to the eastern boundary thereof, has been so fully constructed that trains of cars have daily (Sunday excepted) run over the same; and said railway company has, during said time, in *good faith*, operated the same as a railroad,

and held itself out to the public as a common carrier, and has carried the United States mails, and transacted the freight and passenger business of the county along the line of said railroad through said Gibson county to and from said town of Princeton."

It may be that this is not a full answer to the part of the comcomplaint quoted, but it does, nevertheless, show a full performance of the conditions prescribed by the petition. In the part of the complaint quoted, the pleader charges the corporation with not having done what it was not bound to do, and of course the answer was not required to meet such a charge. The answer avers that the railway corporation did do all that the petition and order required it to do. The fault is not in the answer, but in the complaint, for the latter assumes that the railway company was bound to do more than the petition or order required, and upon this erroneous assumption makes the charge which it is said the answer does not deny or avoid. The answer does show full performance of all that the railway company was bound to do, and is not bad merely because it fails to answer an assumption expressed in a conclusion of law stated by the pleader, which is altogether unsupported by the specific facts affirmatively pleaded in the complaint.

The meaning of the petition upon which the appropriation was based, is that the road shall be completed as therein prescribed prior to receiving the money appropriated. It is not meant that the road shall be perfect in every respect, but that it shall be so far compeleted that it may be properly and regularly used for the purpose of transporting freight and passengers. The language of the court in *Freeman* v. *Matlock*, 67 Ind. 99, is so strongly applicable here that we quote it: "It was not necessary that the road should be perfect and finished in every particular, and its track well ballasted. But it seems to us that the road should have been so far completed on its located and established line that the cars might have been run," and were run over it with reasonable regularity.

Judgment affirmed.

J. E. McCullock, L. C. Embree, for appellant.