Filed April 18, 1894.

---

No. 16,565.

## The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company *v.* Harden, Treasurer, et al.

Taxation.—*Railroad.—Public Aid to Rival Company.—Constitutional Law.*—The property of a railroad company within a township which has voted a donation to aid in the construction of another and rival railroad therein, to be raised by a tax upon the property within the township, is subject to its share of the burden thus imposed.

Same.—*County Commissioners' Proceedings. — Injunction.— Collateral Attack.*—Questions which it is necessary for the board of county commissioners to pass upon to render valid the order granting the prayer of the petition to aid a railroad company, and the subsequent proceedings in making the appropriation and ordering the levy of a tax, can not afterwards be raised in a collateral proceeding for injunction.

Same.—*Consolidated Railroad.—Rights of in this State.*—Where a railroad company, organized under the laws of this State, consolidates with a railroad company organized under the laws of another State, the consolidated company has, in this State, all the rights held by the Indiana company, of which it is in part formed.

Same.—*Property and Domicil of Railroad.*—A railroad company which is one corporation, having one management and one board of directors, has a domicil in each State in which the road is situated, and, in relation to any State, is a separate corporation, governed by the laws of that State as to the property situated therein.

Same.—*Forfeiture of Aid Tax.*—In the absence of a forfeiture declared in the manner provided by law, the collection of a tax levied in aid of the construction of a railroad can not be enjoined.

Same.—*Suspension of Collection of Aid Tax.*—The county commissioners have authority to suspend the collection of a tax voted to aid in the construction of a railroad until the work thereon is under way,

Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Harden *et al.*

and the suspension does not forfeit the right to the aid, but the tax may be collected as if levied in the first instance.

SAME.—*Purchaser of Property Takes Subject to Right to Impose Taxes.*— Property is purchased subject to the right of the State to impose taxes, and where proceedings for the imposition of a tax have been begun, and later suspended by proper authority, a subsequent purchaser of property must take notice that the tax may afterwards be collected.

SAME.—*Railroad Aid Laws.—Not Restricted to New Companies.*—Railroad aid laws are upheld on the ground of public benefit, and hence a donation may be voted to aid in the construction of the extension of a line already in operation as well as to aid in the construction of an entirely new road.

From the Henry Circuit Court.

*J. L. Rupe* and *C. H. Burchenal,* for appellant.
*C. E. Cowgill* and *J. T. Dye,* for appellees.

HOWARD, C. J.—This was an action brought by the appellant against the treasurer and auditor of Henry county and Wayne township, in said county, to enjoin the collection of taxes assessed against the property of the appellant railway company in said township, in aid of the construction of an extension through the township, of a certain railroad now owned by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company.

The controversy is, in reality, between the two railway companies, the one favoring and the other opposing the collection of the tax.

On August 11, 1882, the Cincinnati, Wabash and Michigan Railway Company, a corporation organized under the laws of this State, and owning and operating a railroad extending from the Michigan State line through Goshen to Anderson, in this State, with a franchise extending south from Anderson, through said Wayne township, to Rushville, Indiana, was consolidated with the Elkhart, Niles and Lake Michigan Railroad Company, a corporation organized under the laws

of the State of Michigan, and owning and operating a railroad connecting with and extending from the first named road north to Benton Harbor, Michigan. The consolidated company took the name of the Cincinnati, Wabash and Michigan Railway Company, all of whose property and rights have since passed under the management and control of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company.

In March, 1887, certain freeholders of Wayne township presented to the Board of Commissioners of Henry county, then in special session, their petition, representing that the said C. W. & M. R. W. Co. was about to extend its road from Anderson to Rushville, by way of Knightstown, in said township, if reasonable aid could be procured therefor, and praying the board to make an appropriation of $35,320, to be paid as a donation to said railroad company; said sum to be chargeable upon the taxable property of Wayne township, and being not in excess of two per cent. of the taxable property of said township, as shown upon the tax duplicate.

The question of voting such appropriation was submitted to the voters of the township, after due notice given. At the June session, 1887, of the board, it was found that a majority of the votes cast were in favor of the appropriation, and that all the proceedings were regular. The board also found that said railroad is permanently located in said township. Thereupon the prayer of the petition was granted, and one-half of the amount of the appropriation levied as a special tax upon the duplicate of 1887, the remainder to be levied and assessed in 1888.

Afterwards, it appearing that the company was unprepared to begin work upon such extension, the tax was not placed upon the duplicate for the years 1887, 1888 nor 1889, all proceedings for the collection of the taxes

being suspended until the June session, 1890, of the board of county commissioners. On June 10, 1890, the board ordered and directed the auditor to assess a tax of one per cent. upon the property shown upon the tax duplicate for 1887, to collect a part of said appropriation, and to assess the remainder of said appropriation upon the property shown upon the tax duplicate for 1888.

Against the collection of so much of this tax as was levied upon the property of the appellant railway company in Wayne township, this suit for injunction was brought. To the complaint, alleging the foregoing and other facts, a demurrer was sustained, which ruling is the only error assigned on this appeal.

The appellant company first contends that under the constitution of this State, no tax can be lawfully levied upon appellant's property, used exclusively for railroad purposes, in order to aid in the construction of a railroad of another rival and competing company, appellant not acquiescing in or consenting to the levy of such tax, and having no capacity or opportunity to vote or to be represented in voting upon the question, and the construction of such rival road being an injury, and not a benefit, to the appellant.

In favor of this proposition, appellant argues that railroad aid laws have been upheld largely on the ground that the object for which the tax is levied is as a benefit to the taxpayers, and that the taxpayers have a right to vote upon the question and determine whether the burden shall be imposed, and upon what conditions. In support of which, counsel cite: *Brocaw* v. *Board, etc.,* 73 Ind. 543; *Lafayette, etc., R. R. Co.* v. *Geiger,* 34 Ind. 185; *John* v. *Cincinnati, etc., R. R. Co.,* 35 Ind. 539; *Alvis* v. *Whitney,* 43 Ind. 83; *Garrigus* v. *Board, etc.,* 39 Ind. 66.

These authorities fully sustain the constitutionality of

laws authorizing the voting of aid to railroads, on the theory that the community voting the tax is benefited to an amount equal to the tax imposed. Appellant's counsel, however, reason that what is said in those and other cases can not apply to the appellant company which will not be benefited by the tax, and which, besides, had no voice in imposing the assessment. This reasoning, if good, would be fatal to the imposition of all taxes. There may always be found one or more persons who might make the claim that the tax imposed is of no benefit to them; and there are many persons who, by reason of absence, sex, infancy or other disability, are denied a voice in the imposition of the tax. Yet, when a majority of those voting on the question have determined in favor of the burden, it is taken as the voice of the whole community; and not only those who do not or who can not vote upon the proposition, but even those who vote against it, are equally held bound by the result. The majority of the voters, proceeding under the forms and by the authority sanctioned by the Legislature, speaks for the general good. Even the rival railroad company participates in the increased prosperity caused by the construction of the new road.

Neither could it be admitted that a general tax in the township, whether in aid of a railroad or for any other purpose, could be imposed upon some property in the township and not on other property. All must bear the common burden, at "a uniform and equal rate of assessment," as provided in the constitution. Further, as to the legality of taxes in aid of highways and roads, including railroads, see Cooley Taxation (2d ed.), pages 130–134.

In addition, it is to be observed that the validity of the order of the board of commissioners in granting the prayer of the petition, and the subsequent proceedings

Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. *v.* Harden *et al.*

in making the appropriation and ordering the levy of the tax, are here attacked, not directly or by appeal from the orders of the board, but collaterally by injunction.

In such case, "the board," as said in *Faris, Treas.*, v. *Reynolds,* 70 Ind. 359, "must be taken to have determined that proper notice of the election had been given, and that all steps required by law had been taken in order to the granting of the petition."

So, in *Reynolds* v. *Faris, Treas.*, 80 Ind. 14, it was said, "that by granting the prayer of the petitioners, the board must be taken to have decided every fact essential to the validity of the order, which decision is conclusive, unless appealed from."

In *Montgomery* v. *Wasem,* 116 Ind. 343, the court said: "It is well settled, that where the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision is conclusive as against collateral attack," citing numerous authorities.

In *Hilton* v. *Mason, Treas.*, 92 Ind. 157, the court, after collating and citing many authorities, laid down the rule, "that every defense, either in law or fact, that can be made against the appropriation before the board of commissioners, must be made before that court, or on appeal; and, if not so done, the parties are estopped from making it elsewhere, or by an injunction or by collateral attack as to matters existing when the petition was presented, or at the time of the final order of the board granting the petition and levying the tax."

In *Board, etc.,* v. *Montgomery,* 106 Ind. 517, it was declared that: "The doctrine that the decision of the board approving the petition and ordering the tax, settles all preliminary questions, whatsoever be their nature, is too firmly established to be now successfully questioned."

It thus appears that the chief questions here raised by the appellant company have already been settled by the decisions of this court.

The second proposition advanced by counsel for appellant is, that the said C. W. & M. Ry. Co., in whose favor the appropriation was made, was, at the time, an interstate railroad company, formed by the consolidation of a railroad company, organized under the laws of this State, with a railroad company organized under the laws of the State of Michigan; and that it does not, therefore, fall within the purview of the laws of this State authorizing the granting of aid to railroads.

This, too, is a question which was involved in the decision of the commissioners' court, when they granted the petition for and ordered the levy of said taxes; and what we have said as to collateral attack applies also to this proposition. Besides, the consolidated company has, in this State, all the rights held by the Indiana company, of which it is in part formed by consolidation. In addition, it has frequently been decided that a railroad company which is one corporation, having one management and one board of directors, has a domicil in each State in which the road is situated; and, in relation to any State, is a separate corporation, governed by the laws of that State as to the property situated therein. The consolidated company was thus, in reality, a railroad company, duly organized under the laws of this State; and, so far as the interests of the people of Wayne township were concerned, its extension through that township was of even greater value than if it did not extend to Benton Harbor, in the State of Michigan. See *Scott* v. *Hansheer, Treas.*, 94 Ind. 1; *Jussen* v. *Board, etc.*, 95 Ind. 567; *Graham* v. *Boston, etc., R. R. Co.*, 118 U. S. 161; *Stone* v. *Farmers Loan & Trust Co.*, 116 U.

S. 307; *Railroad Co.* v. *Harris*, 12 Wall. 65; *Clark* v. *Barnard*, 108 U. S. 436.

The third proposition advanced is that the work of construction of the railroad, from Anderson to Rushville, was not commenced within two years after the levy of the tax. And the fourth proposition is that the road was not completed through Wayne township within three years.

It is, perhaps, sufficient answer to these propositions to say that no forfeiture of the taxes levied was ever declared; and that without such declaration of forfeiture the collection of the special tax can not be enjoined. *Nixon* v. *Campbell*, 106 Ind. 47.

The railroad company, not being able to begin or complete the road in the time contemplated when the tax was first voted, the county commissioners, under provisions of section 5369, R. S. 1894, suspended the collection of the taxes; but there was, and could be, no forfeiture unless expressly declared in the manner provided by law. *Wilson* v. *Board, etc.*, 68 Ind. 507; *Board, etc.*, v. *Center Tp.*, 105 Ind. 422.

We may further note that the petition did not fix a time within which the extension of the road should be completed. Time was not, therefore, made an element in the agreement of the company to build the road; and so long as the road was not completed the money might be withheld by the commissioners. The road might be completed, however, before the tax could be collected, and the failure to have it completed before that time would not authorize an injunction against the collection. *Brocaw* v. *Board, etc., supra;* 15 Am. and Eng. Encyc. of Law, 1284–5.

The fifth proposition is, that by the suspension of the proceedings for the collection of the taxes, the right to the aid was forfeited. This has already, in effect, been

answered.   It was the duty of the commissioners to suspend the collection of the taxes until the work on the road should be sufficiently advanced to justify them in making the collection; and, as we have seen, they had warrant for doing this in the statute itself.

A like answer may be made to the sixth proposition, that the order of the board made June 10, 1890, directing the placing of the tax upon the duplicate, was unauthorized.   The authority to suspend carried with it the authority to require the collection made as soon as the requisite conditions were fulfilled by the railroad company.

In the seventh proposition, the claim is made that the appellant railway company, not having been the owner of the property now owned by it in said township, at the date of the levy, and said property not having been on the tax duplicate at the date of the purchase thereof by appellant, the tax was invalid as to appellant, a good faith purchaser for full value, without notice of tax lien.

To this it may be replied that all property is purchased subject to the right of the State to impose any taxes upon it for the common public benefit.   The proceedings for the imposition of this tax had been begun and were suspended by the proper authority, as provided by the statute.   This was sufficient notice that the tax might be collected on compliance by the road with the conditions required.   All the property of the township was in like manner subject, not only to this tax, but to any other tax that might be imposed under the laws of the land.

In the eighth proposition, it is contended that the object of the railroad aid tax laws is to assist in building new railroads, and not to aid roads already constructed and in active operation; and that as the said C. W. & M. R. W. Co. had, at the time of this levy, a road in

full operation from Benton Harbor to Anderson, the law did not contemplate aid in its extension further south.

We have already answered this. The people of Wayne township were even more interested in acquiring the use of an extension of a road already in successful operation than they would have been in the building of a new and untried railroad. But, in addition to this, counsel are mistaken as to the real purpose of these railroad aid laws. It is not to benefit the railroad company at the expense of the taxpayers, that such laws are enacted; nor could they, on such ground, be defended under the provisions of the constitution. The validity of such laws is based upon the benefit which the taxpayers are believed to derive from the building of the road. In this respect, these laws have the same basis as those which authorize taxation for the construction of other highways, of bridges, of school houses, and other public works, from which the people are supposed to derive a return which will be the equivalent of the tax expended.

The ninth, and last, proposition advanced by counsel is that the collection of the taxes in question would be in violation of the Constitution of the United States, inasmuch as the appellant would thus be deprived of its property without due process of law, and would be denied the equal protection of the law.

This proposition, however, is not discussed in the brief of counsel, and we can conceive of no argument or authority upon which the proposition might rest. It is well settled that railroads are of such a public character that, in the absence of constitutional restrictions, municipal corporations may be authorized, by legislation, to aid in their construction. 15 Am. and Eng. Encyc. of Law, 1242, and authorities cited in note.

Other questions discussed in the able brief of counsel need not, as we think, be considered. We are satisfied

that there is no error in the record for which the judgment should be reversed. The constitutionality of railroad aid laws having been frequently affirmed, these laws should be liberally interpreted in favor of the purpose for which they have been enacted.

The judgment is affirmed.

Filed April 27, 1894.